Fred Thomas HANEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 51733.

Court of Criminal Appeals of Texas.

July 14, 1976.

Dissenting Opinion on State's Motion for Rehearing Dec. 22, 1976.

D. Channing Bradshaw and Earl B. Cass, Jr., Pasadena, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough, Charles Cottingham, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for the offense of unlawfully dispensing phenmetrazine by a practitioner. Punishment was assessed by the court following a guilty verdict at ten (10) years, probated.

The appellant, a licensed physician, was charged in five indictments with unlawfully dispensing phenmetrazine to Thomas Garner, shown to be an undercover agent, on various dates. The five indictments were consolidated upon appellant's motion and were jointly tried. The appellant was acquitted in four of the cases.

In the appeal from the conviction obtained appellant, among other things, contends the court erred in failing to quash the indictment and challenges the sufficiency of the evidence to sustain the conviction contending the evidence does not show he committed an offense.

The indictment in question alleged, omitting the formal parts, that the appellant on or about February 12, 1974, did "intentionally dispense a controlled substance; to-wit, phenmetrazine, to Thomas Garner, and the said Fred Thomas Haney, M.D. did not dispense said controlled substance to the said Thomas Garner in the course of professional practice, in that no medical examination was given to said Thomas Garner before dispensing the said controlled substance."

Section 3.01(b) of the Texas Controlled Substances Act (Article 4476–15, Vernon's Ann.C.S.) provides:

"*Persons registered* by the director *under this Act to* manufacture, distribute, *dispense*, analyze, or conduct research with controlled substances *may* possess, manufacture, distribute, *dispense*, analyze, or conduct research with those substances to the extent authorized by their registration and in conformity with the other provisions of this Act." (Emphasis Supplied)

Section 3.03(b)(1) of the same Act reads:

"The director shall register an applicant *to dispense* any controlled substances in Schedules II through V or to conduct research with controlled substances in Schedules II through V, if:

"(1) the applicant is a practitioner licensed under the laws of this state." (Emphasis Supplied)

Section 1.02(24) reads in part:

"(24) 'Practitioner' means:

"(A) a *physician*, dentist, veterinarian, scientific investigator, or other person licensed, registered, or otherwise *permitted to* distribute, *dispense*, analyze or conduct research with respect to, or to administer a controlled substance in the course of professional practice or research in this state; or

"(B) . . . ." (Emphasis Supplied)

Sections 1.02(10), (11), (26) and (5) of the same Act read:

"(10) 'Dispense' means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner (in the course of professional practice or research), including the prescribing, administering, packaging, labeling, or compounding necessary to prepare the substance for such delivery.

"(11) 'Dispenser' means a person who dispenses.

"(26) 'Ultimate user' means a person who has lawfully obtained and possesses a controlled substance for his own use or for the use of a member of his household or for administering to an animal owned by him or by a member of his household.

"(5) 'Controlled substance' means a drug, substance, or immediate precursor listed in Schedules I

through V and Penalty Groups 1 through 4 of this Act."

Section 4.08 of the Texas Controlled Substances Act provides:

"(a) It is unlawful for any person:

"(1) who is a practitioner knowingly or intentionally to distribute or dispense a controlled substance in violation of Section 3.08;

"(2) who is a registrant knowingly or intentionally to manufacture a controlled substance not authorized by his registration or to distribute or dispense a controlled substance not authorized by his registration to another registrant or other person;

"(3) to refuse or fail to make, keep, or furnish any record, notification, order form, statement, invoice, or information required under this Act; or

"(4) to refuse an entry into any premises for any inspection authorized by this Act.

"(b) An offense under this section is a felony of the second degree."

Section 3.08 of the Texas Controlled Substances Act provides:

"(a) No controlled substance in Schedule II may be dispensed without the written prescription of a practitioner, except when dispensed directly to an ultimate user by a practitioner, other than a pharmacy.

"(b) In emergency situations, as defined by rule of the director, Schedule II drugs may be dispensed upon oral prescription of a practitioner, reduced promptly to writing by the pharmacy and filed by the pharmacy. Prescriptions shall be retained in conformity with the requirements of Section 3.06. No prescription for a Schedule II substance may be refilled.

"(c) Except when dispensed directly to an ultimate user by a practitioner, other than a pharmacy, a controlled substance included in Schedule III or IV, which is a prescription drug as determined under the Federal Food, Drug, and Cosmetic Act, shall not be dispensed without a written or oral prescription of a practitioner. The prescription shall not be filled or refilled more than six months after the date thereof or be refilled more than five times, unless renewed by the practitioner.

"(d) A controlled substance included in Schedule V shall not be distributed or dispensed other than for a medical purpose.

"(e) No prescription for Schedule II narcotic drugs shall be filled after the second day the prescription was issued."

Section 2.04 of the Controlled Substances Act lists the Schedule II substances and drugs. In subsection (d)(4) thereof, "phenmetrazine and its salts" are listed as a Schedule II drug. Phenmetrazine is the drug alleged in the indictment.

It would seem that under the provisions of said Section 4.08(a)(1) a practitioner cannot be convicted of the offense of unlawfully dispensing a controlled substance except in violation of Section 3.08.

Where a practitioner dispenses a controlled substance listed in Schedule II (as in the instant case) upon written prescription (not without written prescription) has he violated the provisions of the said Section 3.08?

Putting aside any question as to whether the indictment is sufficient to charge the offense of dispensing a controlled substance by a practitioner, we turn to the facts to see if the proof supports such offense.

It was stipulated that the appellant was a licensed physician, a medical doctor in the State and had been licensed since 1938. Thomas Garner of the Department of Public Safety Diversionary Investigative Unit testified he had heard from street talk that prescriptions could be obtained from the appellant if you had a prescription label. With the aid of a pharmacist he obtained a prescription label and typed the appellant's name thereon, as well as the name of William Morrison and the words "to curb appetite." On December 19, 1973, he went to

appellant's office in Houston, said he was Morrison, showed the prescription label on a bottle to the appellant and asked for a prescription for "preludins" (shown to be the trade name for phenmetrazine). He told appellant he was working long hours and needed to curb his appetite. He related that he was not given a medical examination, did not have his blood pressure or weight checked, nor did he see equipment for such purposes, and was not asked any questions about his medical history. He obtained a prescription for preludins and paid the appellant $5.00. The prescription was filled and Garner obtained 30 preludin pills.

Garner returned to appellant's office on January 4, January 17, and February 4, 1974, and each time obtained a prescription for thirty pills of preludin without receiving a medical examination, etc. He had each prescription filled.

On the date charged in the indictment, February 12, 1974, and though he had no prescription label, Garner obtained another prescription for preludins from the appellant without receiving a medical examination. He paid the appellant $5.00 and had the prescription filled at a pharmacy and obtained thirty preludin pills.

Two medical doctors testified for the State that it was not proper in the course of professional practice to prescribe preludin (phenmetrazine) without a medical examination, particularly checking the cardiovascular system, checking for evidence of high blood pressure, etc.

The appellant testified in his own behalf, but it is not necessary to detail all the other evidence since it is without dispute that on the date in question and all other occasions the appellant gave a prescription to Garner.

The State urges that evidence reflects a violation of Section 4.08(a)(1) of the Controlled Substances Act, which provides that it is unlawful for any person who is a practitioner to knowingly or intentionally distribute or dispense a controlled substance "in violation of Section 3.08." Turning to Section 3.08, we find the only applicable subsection thereof to be subsection (a), which provides, "No controlled substance in Schedule II may be dispensed without the written prescription of a practitioner, except when dispensed directly to an ultimate user by a practitioner, other than a pharmacy."

■ It is clear that for there to be a violation of Section 4.08 by a practitioner there must be a violation of Section 3.08. Under the applicable facts involving a Schedule II substance and evidence reflecting that in each instance the appellant issued a written prescription for preludins (phenmetrazine) to Garner, we can perceive no violation of Section 3.08 as enacted by the Legislature.

■ We are not aware of any provision or provisions of the Controlled Substances Act which makes it a penal offense for a practitioner to issue a written prescription for a Schedule II controlled substance without giving a medical examination or taking other steps deemed proper in the course of professional practice.[1] It may be argued

1. The dissent, as we understand it, takes the position that there could be a possible violation under Section 4.03(a), which provides:

"(a) Except as authorized by this Act, a person commits an offense if he knowingly or intentionally manufactures, delivers or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1, 2, 3 or 4."

The offense of delivery of phenmetrazine (a controlled substance in Penalty Group 3 as provided by Sec. 4.02(d)(1)(C) of the Controlled Substances Act) is a third degree felony. Sec. 4.05(b)(3), Controlled Substances Act.

Sec. 1.02(8) of the Act provides that " 'Deliver' or 'delivery' means the actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship. For purposes of this Act, it also includes an offer to sell a controlled substance. Proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree."

Sec. 1.02(10) of the Act defines " 'Dispense' means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner (in the course of professional practice or research), including the prescribing, administering, packaging, labeling, or compounding necessary to prepare the substance for such delivery."

that such should be an offense under the law, but this is a matter addressed to the Legislature.

V.T.C.A., Penal Code, Sec. 1.03, reads as follows:

"(a) Conduct does not constitute an offense unless it is defined as an offense by statute, municipal ordinance, order of a county commissioners court, or rule authorized by and lawfully adopted under a statute.

"(b) The provisions of Titles 1, 2, and 3 of this code apply to offenses defined by other laws, unless the statute defining the offense provides otherwise; however, the punishment affixed to an offense defined outside this code shall be applicable unless the punishment is classified in accordance with this code.

"(c) This code does not bar, suspend, or otherwise affect a right or liability to damages, penalty, forfeiture, or other remedy authorized by law to be recovered or enforced in a civil suit for conduct this code defines as an offense, and the civil injury is not merged in the offense."

Subsection (a) of the foregoing section restates and refines the prior law's prohibition against "unwritten penal law." See Article 3, Vernon's Ann.P.C., 1925. It has long been the law in this State that no act or omission is a crime unless made so by statute. The object of former Article 3 was to prohibit prosecution for what was an offense at common law but not made penal by statute. Our statutes have been wholly intolerant of constructive offenses.

We are not unaware of the decision of *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), that registered physicians may be prosecuted for violation of the Federal Controlled Substances Act (21 U.S.C., Sec. 841(a)(1)) when their activities fall outside the usual course of professional practice. However, because of the difference in the language of the Federal and State statute, the decision is distinguishable from the instant case.

For the reasons stated, the judgment is reversed and the cause remanded.

ODOM, Judge (dissenting).

I dissent to the reversal of this conviction. The majority do not hold simply that the evidence is insufficient to show that appellant violated the Controlled Substances Act when he wrote the prescription for Garner; they hold that because the prescription was written by a doctor, it is impossible to show a violation of that law, regardless of how abbreviated an evaluation of the grounds for writing the prescription was made, or even if no evaluation was made at all. If the actor is a practitioner and a prescription is written, the delivery of a Schedule II controlled substance by prescription is protected under the majority's holding. Even a set of facts as astounding as that set out in *United States v. Moore,*

---

Obviously "dispense" is a special and limited means of delivery provided by statute and would control over the broad general definition of "delivery," which relates to the transfer, actual or constructive, of a controlled substance. "Dispense" relates to those instances where dispensing is pursuant to the lawful order of a practitioner. Thus Sections 4.08 and 3.08 relate to the offense of unlawful dispensing a controlled substance by a practitioner. A reading of the entire Act, including the definition of "Practitioner," and provisions of Subchapter 3 (Regulations of Manufacture and Dispensing of Controlled Substances), it can readily be seen that "dispense" has a separate and distinct meaning from "delivery" for purposes of the Act.

There is another reason why Section 4.03(a), supra, is not applicable. The section commences with the words, "Except as authorized by this Act . . . ." As earlier noted in this opinion, persons registered under the Act to dispense may dispense controlled substances in accordance with the Act. See Section 3.01(b). Further the director shall register an applicant to dispense controlled substances in Schedules II through V if the applicant is a practitioner licensed under the law of this State. See Section 3.03(b)(1). A "practitioner" includes a physician permitted to dispense controlled substances. See Section 1.02(24). The facts show the appellant was a licensed physician in this State. Even if it could be argued that the "delivers" portion of Section 4.03(a) had reference to dispensing of controlled substances by written prescription by a physician, the Act elsewhere provides for authorization for such action and thus would fall under the portion of the section reading, "Except as authorized by this Act."

423 U.S. 122, at 126, 96 S.Ct. 335, at 338, 46 L.Ed.2d 333, at 339, cited by the majority, apparently would be lawful under the holding of the majority.

The majority state:

"We are not aware of any provision or provisions of the Controlled Substances Act which makes it a penal offense for a practitioner to issue a written prescription for a Schedule II controlled substance without giving a medical examination or taking other steps deemed proper in the course of professional practice."

I would suggest that they have failed to address the issue of whether such acts would violate Sec. 4.03 of the Controlled Substances Act, which provides in part:

"(a) Except as authorized by this Act, a person commits an offense if he knowingly or intentionally manufactures, delivers or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1, 2, 3, or 4."

Phenmetrazine, the substance in this case, is listed in Penalty Group 3. Sec. 4.02(d)(1)(C), Controlled Substances Act. The majority persuasively demonstrate that such acts do not violate Secs. 4.08 and 3.08, but failure of those sections to prohibit the acts does not warrant the conclusion that the acts are *authorized* by the Act. The language of Sec. 4.03(a), supra, prohibits every delivery of such substances unless expressly authorized by the Act. The conduct here was a delivery (constructive transfer by prescription, see Sec. 1.02(8) and (10)), and unless a specifically authorized delivery, it was an unlawful delivery. I am not aware of any provision or provisions of the Controlled Substances Act that authorize unlimited prescription-writing powers granted to physicians by the majority.

According to footnote 1 of the majority, Sec. 4.03 does not apply for two reasons. First, "dispense" and "deliver" are characterized as "separate and distinct." It is asserted there, " 'Dispense' relates to those instances where dispensing [delivery?] is pursuant to the lawful order of a practitioner. Thus Sections 4.08 and 3.08 relate to the offense of unlawful dispensing a controlled substance by a practitioner." This language leaves the impression that dispensing is by definition lawful, yet unlawful dispensing is an offense! The parties in this case and the people of Texas are entitled to clarification of this paradox. Is dispensing by definition lawful, or is there such an offense as unlawful dispensing?

Second, the majority in footnote 1 state that Sec. 4.03 does not apply because that section exempts deliveries authorized by the Act. Reference is made to Sections 3.01(b) and 1.02(24), yet those provisions read:

"Persons registered by the director under this Act to manufacture, distribute, dispense, analyze, or conduct research with controlled substances may possess, manufacture, distribute, dispense, analyze, or conduct research with those substances *to the extent authorized by their registration and in conformity with the other provisions of this Act.*" Sec. 3.01(a). (Emphasis added.)

" 'Practitioner' means:

"(A) a physician, dentist, veterinarian, scientific investigator, or other person licensed, registered, or otherwise permitted to distribute, dispense, analyze or conduct research with respect to, or to administer a controlled substance *in the course of professional practice* or research in this state; . . ." Sec. 1.02(24). (Emphasis added.)

The majority, without discussion of the apparent limitations of the emphasized portions of the quoted provisions, asserts "the Act elsewhere provides for authorization" for unlimited prescription-writing powers, yet neglects to specifically identify the statutory language that "elsewhere" so provides.

Furthermore, under the majority's holding that all prescriptions written by practitioners for Schedule II substances, are valid prescriptions, read in conjunction with Sec. 3.01(e)(3) and Sec. 4.04(a) of the Act, anyone possessing such a controlled substance pursuant to any such prescription is likewise in lawful possession of that controlled substance. Sec. 3.01, supra, provides in part:

"(e) *The following persons* need not register and *may lawfully possess controlled substances under this Act*:

\*    \*    \*    \*    \*    \*

"(3) an ultimate user, as that term is defined herein, or *a person in possession of any controlled substance pursuant to a lawful order of a practitioner* or in lawful possession of a Schedule V substance." (Emphasis added.)

Section 4.04(a) prohibits possession of a controlled substance "Except as authorized by this Act", e. g. possession pursuant to a lawful order of a practitioner, which lawful orders include all practitioner-written prescriptions, under the majority's holding today.

Unless authorization is shown under the Act for unlimited prescription-writing powers for physicians, I must dissent.

## DISSENTING OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

After further consideration, it appears that the dissenting opinion by Judge Odom on original submission is correct. The Legislature made it a penal offense under the Controlled Substances Act for a practitioner to issue a written prescription for a Schedule II controlled substance without taking steps deemed proper in the course of professional practice. It appears that the Legislature intended to restrict the activities of physicians, as well as others, who might deal in controlled substances.

Article 1.02(24) of the Act defines practitioner as being "a physician, or other person licensed, registered, or otherwise permitted to distribute \*  \*  \* a controlled substance *in the course of professional practice.* . . ." (Emphasis supplied)

Section 3.01(b) of the Act provides that persons registered under the Act may, among other things, dispense those substances "to the extent authorized by their registration and in conformity with the other provisions of this Act."

The Controlled Substances Act makes it a penal offense for a practitioner to issue a written prescription without giving a medical examination or taking other steps deemed proper in the course of professional practice.

The State's motion for rehearing should be granted and the judgment affirmed.