Homer Lee MERRIMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 55134.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 28, 1979.

On Rehearing March 12, 1980.

Richard Haynes and Robert B. Wallis, Houston, for appellant.

Arthur C. Eads, Dist. Atty. and James T. Russell, Asst. Dist. Atty., Belton, for the State.

Robert Huttash, State's Atty., Austin, for the State on State's Motion for rehearing.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ONION, Presiding Judge.

This is an appeal from a conviction for delivery of a controlled substance, hydromorphone; punishment is imprisonment for sixteen (16) years.

The judgment was affirmed in a per curiam opinion delivered November 22, 1978. That opinion did not address appellant's contentions because the record then before a panel of this court showed that appellant's retained counsel had filed his brief four days late. A supplemental transcript containing an order extending the time for filing the brief then was filed in this court on November 30, 1978, and on December 20, 1978, appellant filed a motion for leave to file a motion for rehearing in which he asserted that the brief had been filed within the extended period. Appellant's motion for leave to file a motion for rehearing was granted by this court on December 20, 1978. We now grant appellant's motion for rehearing and reverse the judgment.

The indictment alleged that appellant, on or about February 17, 1976, did "knowingly and intentionally deliver to Brantley Foster a controlled substance, namely: Hydromorphone . . . ." Hydromorphone is a controlled substance under the Texas Controlled Substances Act [Article 4476–15, § 2.04(b)(K), V.A.C.S.]; the offense of delivery of hydromorphone is classified as a first degree felony. Article 4476–15, § 4.02(b)(3)(xi), § 4.03(b)(1).

Foster, an undercover agent of the Department of Public Safety, testified that he called appellant on February 14, 1976, and arranged to meet him on February 17, 1976, at a pharmacy owned and operated by appellant in Lampasas. At that meeting, which took place after appellant closed the store and he and Foster retired to the back room, they discussed the sale of a number of controlled substances from appellant to Foster. Their conversation lasted approximately fifty minutes, following which Foster purchased 100 preludin tablets, 250 quaalude tablets and fifty dilaudid tablets.

Vickie Patterson, a Department of Public Safety chemist, testified that the dilaudid tablets contained hydromorphone.

James Gilstrap, a Department of Public Safety narcotics officer, testified that he supervised five other officers who worked in a forty-six-county area which included Lampasas. The officers under Gilstrap's control were responsible for inspecting inventories of controlled substances of practitioners in their area. Gilstrap testified that appellant was a licensed pharmacist and that he was licensed under the Texas Controlled Substances Act.

Relevant to our disposition of this appeal are the following sections of the Texas Controlled Substances Act:

§ 4.03 provides, in pertinent part, as follows:

"(a) Except as authorized by this Act, a person commits an offense if he knowingly or intentionally manufactures, delivers or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1, 2, 3, or 4."

§ 4.08 provides, in pertinent part, as follows:

"(a) It is unlawful for any person:

"(1) who is a practitioner knowingly or intentionally to distribute or dispense a controlled substance in violation of Section 3.08."

§ 3.08 provides as follows:

"(a) No controlled substance in Schedule II may be dispensed without the written prescription of a practitioner, except when dispensed directly to an ultimate user by a practitioner, other than a pharmacy.

"(b) In emergency situations, as defined by rule of the director, Schedule II drugs may be dispensed upon oral prescription of a practitioner, reduced promptly to writing by the pharmacy and filed by the pharmacy. Prescriptions shall be retained in conformity with the requirements of Section 3.06. No prescription for a Schedule II substance may be refilled.

"(c) Except when dispensed directly to an ultimate user by a practitioner, other than a pharmacy, a controlled substance included in Schedule III or IV, which is a prescription drug as determined under the Federal Food, Drug, and Cosmetic Act, shall not be dispensed without a written oral prescription of a practitioner. The prescription shall not be filled or refilled more than six months after the date thereof or be refilled more than five times, unless renewed by the practitioner.

"(d) A controlled substance listed in Subdivision (1) or (2), Subsection (b), Section 2.07 of this Act, may not be dispensed without the prescription of a practitioner, except when dispensed directly to an ultimate user by a practitioner other than a pharmacy, and a prescription for the substances may not be filled or refilled more than six months after the date of the prescription or be refilled more than five times, unless renewed by the practitioner. A controlled substance included in Schedule V shall not be distributed or dispensed other than for a medical purpose.

"(e) No prescription for Schedule II narcotic drugs shall be filled after the second day the prescription was issued."

§ 1.02 provides, in pertinent part, as follows:

"  *   *   *

"(8) 'Deliver' or 'delivery' means the actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship. For purposes of this Act, it also includes an offer to sell a controlled substance. Proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree.

"  *   *   *   *  ·

"(10) 'Dispense' means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner (in the course of professional practice or research), including the prescribing, administering, packaging, labeling, or compounding necessary to prepare the substance for such delivery.

"  *   *   *

"(24) 'Practitioner' means:

"(A) a physician, dentist, veterinarian, scientific investigator, or other person licensed, registered, or otherwise permitted to distribute, dispense, analyze or conduct research with respect to, or to administer a controlled substance in the course of professional practice or research in this state; or

"(B) a pharmacy, hospital, or other institution licensed, registered, or otherwise permitted to distribute, dispense, conduct research with respect to, or administer a controlled substance in the course of professional practice or research in this state.

"  *   *   *"

Gilstrap's testimony established that appellant was a "practitioner" within the meaning of that term as used in the Controlled Substances Act. Article 4476–15, § 1.02(24)(B), supra. As such, he was not liable to prosecution for "delivery" of a controlled substance under § 4.03(a), supra,

and could have been convicted for only unauthorized "dispensing" of a controlled substance in violation of § 3.08, supra, as proscribed by § 4.08(a)(1), supra. See *Haney v. State*, 544 S.W.2d 384 (Tex.Cr.App.1976).

The evidence is sufficient to sustain a conviction for unauthorized dispensing of a controlled substance under § 4.08(a)(1) and § 3.08(a), supra. The indictment, however, alleges that appellant had committed the offense of delivery of a controlled substance under § 4.03(a), supra, and the judgment recites that he was found guilty of the same. There is a fatal variance between the offense which was alleged and that which was proved, and the evidence therefore is not sufficient to sustain the conviction. See *Bullet v. State*, 538 S.W.2d 785 (Tex.Cr.App.1976); *Byrom v. State*, 528 S.W.2d 224 (Tex.Cr.App.1975); *Green v. State*, 502 S.W.2d 807 (Tex.Cr.App.1973).

The judgment is reversed and reformed to show a judgment of acquittal.

## OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge.

On appellant's motion for rehearing en banc this Court reversed appellant's conviction for the offense of delivery of hydromorphone, reasoning that because appellant was a licensed "practitioner" under the Controlled Substances Act,[1] he may be held criminally liable only for "dispensing" a controlled substance unlawfully, and may not be convicted of a "delivery" offense under the Act. This Court concluded, therefore, that the State's evidence, which established an unlawful "dispensing," fatally varied from the indictment which alleged a "delivery," and held the evidence insufficient to sustain the conviction. The State thereafter was granted leave to file a motion for rehearing; we are persuaded that the State's motion for rehearing must be

sustained. Opinion on appellant's motion for rehearing is withdrawn.

At trial the State presented the testimony of Department of Public Safety undercover agent Brantley Foster, who on February 14, 1976 arranged to meet with appellant, a licensed pharmacist, at the pharmacy owned and operated by the latter on February 17, 1976. Upon Foster's arrival he was told by appellant to wait until closing time. After appellant closed his business at 6:00 p. m., he and Foster went into a back room where they discussed appellant's selling a number of controlled substances to Foster. After the two had talked for approximately an hour, Foster purchased from appellant 100 tablets of preludin, 250 tablets of quaalude and 50 dilaudid tablets at one dollar per tablet. The dilaudid tablets were determined by chemical analysis to contain hydromorphone.

It was further established that appellant was a licensed pharmacist and that he was licensed under the Texas Controlled Substances Act at the time of the transaction. Under the Act, § 1.02(24), "practitioner" means:

(A) a physician, dentist, veterinarian, scientific investigator, or *other person licensed, registered*, or otherwise permitted *to distribute, dispense*, analyze or conduct research with respect to, or to administer *a controlled substance IN THE COURSE OF PROFESSIONAL PRACTICE* or research in this state; or

(B) *a pharmacy*, hospital, or other institution *licensed, registered*, or otherwise permitted *to distribute, dispense*, conduct research with respect to, or administer *a controlled substance IN THE COURSE OF PROFESSIONAL PRACTICE* or research in this state.[2]

Section 1.02(10) provides that "Dispense" means

---

1. The Texas Controlled Substances Act [hereinafter referred to as the Act] is found at Article 4476–15, V.A.C.S.

2. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

to deliver a controlled substance to an ultimate user[3] or research subject by, or *pursuant to the LAWFUL ORDER of, a practitioner* (in the course of, professional practice or research), *including* the prescribing, administering, *packaging, labeling, or compounding necessary to prepare* the substance *for SUCH DELIVERY.*

Finally, Section 3.08 mandates in part that:

(a) *No controlled substance in Schedule II*[4] *may be dispensed without the WRITTEN PRESCRIPTION of a practitioner,* except when dispensed directly to an ultimate user by a practitioner, *other than a pharmacy.*[5]

■ These statutes provide the acts which appellant was authorized to carry out under the Act as a licensed practitioner of pharmacy. Clearly, if a practitioner of pharmacy transfers a controlled substance to another under any circumstances other than on the lawful order of a physician, dentist, veterinarian, etc., in the course of his professional practice, he has exceeded the metes of his authority under the Act,

and his conduct falls within the bounds of criminality.

The statute under which appellant was prosecuted, § 4.03, prescribes:

(a) *EXCEPT AS AUTHORIZED BY THIS ACT,* a person commits an offense if he knowingly or intentionally manufactures, *delivers*[6] or possesses with intent to deliver a controlled substance listed in Penalty Group 1, 2, 3, or 4.[7]

(b) An offense under Subsection (a) of this Section with respect to:

(1) a controlled substance in Penalty Group 1 is a felony of the first degree;

. . .

It is apparent that the Act nowhere authorizes a practitioner of pharmacy to deliver a controlled substance to another under the circumstances proved by the State in the instant case. Conceivably, a combination of §§ 4.08 and 3.08,[8] denouncing commercial offenses of prescriptionless distribution and dispensation of a controlled substance, may preempt the unlawful delivery concept—but not here.[9]

\* \* \* \* \* \*

(b) An offense under this section is a felony of the second degree."

---

3. Subsection (26), supra, provides that, "Ultimate user" means a person who has *LAWFULLY OBTAINED and possesses a controlled substance for his own use* or for the use of a member of his household or for administering to an animal owned by him or by a member of his household.

4. Hydromorphone is a Schedule II drug. Section 2.04(b)(1)(K).

5. The remaining subsections of Section 3.08 likewise relate to restricts governing fulfilling lawful orders of physicians.

6. Section 1.02(8) provides: "Deliver" or "delivery" means the actual or constructive transfer from one person to another of a controlled substance, whether or not there is any agency relationship. For purposes of this Act, it also includes an offer to sell a controlled substance. \* \* \*

7. Under Section 4.02(b)(3)(xi), hydromorphone is listed in Penalty Group 1.

8. Section 4.08, entitled "Commercial Offenses," provides in pertinent part: "(a) It is unlawful for any person: (1) who is a practitioner knowingly or intentionally to distribute or dispense a controlled substance in violation of section 3.08. (Entitled 'Prescriptions.')

9. Unlike the appellant in *Haney v. State,* 544 S.W.2d 384 (Tex.Cr.App.1976) who was a practicing physician, our appellant is a practitioner of pharmacy. Thus, our issue is manifestly different from the question framed and decided in *Haney,* supra at 386:

"Where a practitioner dispenses a controlled substance listed in Schedule II (as in the instant case) upon written prescription (not without written prescription) has he violated the provisions of said Section 3.08?" and at 387:

". . . Under the applicable facts involving a Schedule II substance and evidence reflecting that in each instance the appellant issued a written prescription for preludins (phenmetrazine) to Garner, we can perceive no violation of Section 3.08 as enacted by the Legislature."

Given the context in which *Haney* was decided, its question and answer are inapposite here. Where, as here, a practitioner of pharmacy, unlike a physician, is prohibited by § 3.08(a) from dispensing directly to an ultimate user, we decline to follow the majority response to the dissent in *Haney,* n. 1 at 388, discussing

We find nothing in the Act which compels any conclusion other than that appellant's prescriptionless sale of fifty dilaudid tablets containing hydromorphone, to an undercover narcotics officer for $50.00, after hours in his pharmacy, constitutes a delivery under the Act. Appellant's status as a licensed pharmacist "practitioner" bestows no immunity upon him from commission of the offense for which he was convicted under the facts of this case, and we so hold.

We further hold that the prosecutor permissibly exercised his discretion in charging this appellant with delivery of a controlled substance, and we find no variance between the evidence adduced and the offense charged by indictment. The evidence is sufficient to support the jury's verdict.

Grounds of error four, five and six are without merit for they are each based on the legal premise that we have found faulty and rejected.

The first three grounds of error complain of admission of testimony of extraneous acts of misconduct. The testimony was from agent Foster as he recounted the face-to-face conversation with appellant that led to delivery of the substances during which the latter related the instances of misconduct of which appellant now complains. But as part and parcel of the very transaction at issue content of the conversation was admissible to permit the jury realistically to evaluate the other evidence before it. *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972) and cases following it demonstrate that these grounds of error are untenable. On that authority, then, they are overruled.

The State's Motion for Rehearing is granted; all grounds of error are overruled; the judgment of conviction is affirmed.

delivering and dispensing and, to the extent that it may be read to conflict with our holding

regarding a pharmacist, it is considered not controlling.