Ernesto SANTOSCOY, Appellant,

v.

The STATE of Texas, Appellee.

No. 55910.

Court of Criminal Appeals of Texas, Panel No. 1.

April 16, 1980.

Albert Armendariz, Jr., El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Douglas Gelo, Asst. Dist. Atty., El Paso,

Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and W. C. DAVIS, JJ.

## OPINION

ROBERTS, Judge.

### I.

The appellant was a physician who was charged in an indictment which had fifteen counts, each count alleging that on a certain day he "did then and there unlawfully knowingly and intentionally deliver to [a named person] a controlled substance, namely [a particular substance], against the peace and dignity of the State." Five counts were dismissed at trial. The jury found the appellant guilty on the remaining counts, which were for delivering methaqualone (eight counts), amphetamine, and ethchlorvynol. On each count the jury assessed punishment at four years' confinement and a $500 fine, and it recommended probation of the confinement only. A judgment and order were entered, placing the appellant on probation and requiring him to pay a $5000 fine.

The appellant was licensed by the State of Texas to practice medicine and his license was recorded in the district clerk's office (see V.A.T.S. Arts. 4498 et seq.). He was registered with the Attorney General under the federal Controlled Substances Act; see 21 U.S.C. Sec. 822. He was not registered with the Director of the Texas Department of Public Safety as required by Section 3.01 of the Texas Controlled Substances Act (V.A.T.S. Art. 4476–15).

On sixteen occasions between December 12, 1974, and April 4, 1975, undercover officers (two from the Department of Public Safety, one from the Texas Board of Medical Examiners, and one from the federal Drug Enforcement Administration) posed as patients visiting the appellant's office in Anthony. Each officer began as a new patient and made several visits. Each asked for, and was given, prescriptions for drugs. None complained of any illness or disorder. Two officers were asked if they were addicts, which they denied; no other medical history was asked for. One officer's blood pressure was measured; no other physical examinations were made. Sometimes the appellant wrote prescriptions without even being asked. The prescriptions were filled at local drugstores. Twice the appellant refused to prescribe certain drugs because "the F.B.I.," or "they," were "checking." The appellant also said he was not a moralist. Two physicians who were general practitioners in the community testified that no valid physician-patient relationships had been established by this conduct, which conduct was not the usual course of medical practice in accordance with the standard of medical practice generally accepted and recognized in Texas.

### II.

The proof that the appellant was not registered with the Director of the Department of Public Safety was the written statement of Kenneth W. Decker, which the State offered in rebuttal. Decker swore that he was the custodian of the records of registration under the Texas Controlled Substances Act and that, "a search of records has been made and Ernesto Santoscoy is not now registered and has never been registered with the Texas Department of Public Safety in compliance with the Texas Controlled Substances Act." The appellant claims that, for four reasons, it was error to admit the statement.

First, he says that the State did not deliver a copy of the statement to him before trial as Section 3 of V.A.T.S. Article 3731a requires. Although the appellant made extensive objections (which occupy nine pages in the statement of facts), he did not claim that he was surprised or that he had not been given a copy of the statement before trial. He may not raise this objec-

tion for the first time on appeal. *Campbell v. State*, 521 S.W.2d 636 (Tex.Cr.App.1975); *Hill v. State*, 163 Tex.Cr. 331, 290 S.W.2d 677 (1956).

■ The appellant recognizes that such a statement, by virtue of Article 3731a, Section 5, is an exception to the rule against hearsay. But he reminds us in his second argument that hearsay within the statement—that is, hearsay on hearsay—would not be admissible. See *Smith v. Riviere*, 248 S.W.2d 526, 530 (Tex.Civ.App.—Texarkana 1952, no writ) (admissibility of medical board's records did not extend to hearsay statements about patient's life history). This rule of law avails the appellant nothing, for two reasons: It, too, is raised for the first time on appeal. And, unlike the records in *Smith v. Riviere*, the statement does not appear on its face to relate any hearsay.

■ The appellant next says that the certificate was not proper rebuttal to anything in his case-in-chief. The appellant's defense was based on his status as a practitioner. As evidence of this status he proved the fact that his license to practice medicine was recorded in the district clerk's office, and he introduced a federal "controlled substance registration certificate." The appellant having put his status as a practitioner in issue, it was proper rebuttal for the State to have introduced more evidence relevant to that status.

Finally the appellant argues that Decker's written statement was not relevant to any issue in the case. To the contrary, it was relevant to an issue which was the *sine qua non* of this offense for reasons which we shall discuss next.

### III.

The appellant's principal contention is that, because he was a licensed physician who was registered with the Attorney General of the United States, he could not be convicted of unauthorized delivery under Section 4.03 of the Texas Controlled Substances Act. He relies heavily on *Haney v. State*, 544 S.W.2d 384 (Tex.Cr.App.1976), and especially on the footnote in that case, but his reliance is misplaced. The court held in *Haney v. State* that a physician, whose actions in dispensing a Schedule II drug by giving a written prescription without a medical examination were "not in the course of medical practice," did not commit an offense. There are two important distinctions between that case and this.

### A.

First, *Haney* was charged with *dispensing* and this appellant was charged with *delivering*, which terms deserve some discussion. The parties' briefs proceed on an assumption, apparently gained by misreading *Haney v. State*, that "dispense" and "deliver" are mutually exclusive terms. They are not.

■ "Deliver" includes every kind of transfer of a controlled substance. *See* Texas Controlled Substances Act, Section 1.02(8). Delivering, like Gaul, is divided into three forms: administering, dispensing, and distributing. Every delivery must be in one of those three forms (or an offer to sell; see id.). "Administer" refers to the direct application of a controlled substance to a patient or research subject by, or in the presence of, a practitioner. Texas Controlled Substances Act, Section 1.02(1). "Dispense" refers to a delivery of a controlled substance to an ultimate user or research subject by a practitioner or pursuant to a lawful order of a practitioner. Texas Controlled Substances Act, Section 1.02(10). " 'Distribute' means to deliver other than by administering or distributing a controlled substance." Texas Controlled Substances Act, Section 1.02(12).

The legislative history of the statute also reveals that "delivery" is intended to encompass, not to exclude, "dispensing." The Texas Controlled Substances Act is a substantial adoption of the Uniform Controlled

Substances Act, with variations. 9 U.L.A. 193 (master ed. 1979). The Commissioners' Note to Section 401 of the Uniform Act (the substantial equivalent to Section 4.03 of the Texas Act) states, "The term 'delivery' as used in this Section is intended to include both dispensing and distribution as they are defined in Section 101." *Id.* at 259. (For our purposes, the definitions are identical to those in the Texas Act.)

The statement in *Haney v. State*, 544 S.W.2d 384, 388 n. 1 (Tex.Cr.App.1976) that "deliver" and "dispense" have distinct meanings is correct, but it must not be misunderstood to say that one term excludes the other. "Delivery" includes "dispensing" and the other two forms of transfers (and offers to sell).

■ Even a practitioner can be convicted for a delivery that is outside the bounds of dispensing or administering. *Merriman v. State*, 594 S.W.2d 410 (Tex.Cr.App.1980) (an unauthorized distribution by a pharmacist).

Therefore it may be understood that the charge against Haney of dispensing involved a much narrower range of acts than the entire range of transfers encompassed by the charge of delivering in this case.

### B.

■ A second distinction between *Haney v. State* and this case is that the State offered proof that this appellant was not registered by the Director of the Texas Department of Public Safety (or his designee; see Texas Controlled Substances Act, Section 1.02(9)). This proof goes directly to the heart of a prosecution for delivery under Section 4.03 of the Texas Controlled Substances Act: authorization. Section 4.03(a) provides, "Except as authorized by this Act, a person commits an offense if he knowingly or intentionally . . . deliv-

ers . . . a controlled substance listed in Penalty Group 1, 2, 3, or 4." The lack of statutory authorization to deliver is essential to conviction for delivery.

■ The only authorization of delivery in the Texas Controlled Substances Act is in Section 3.01(b):

"Persons registered by the director under this Act to manufacture, distribute, dispense, analyze, or conduct research with controlled substances may possess, manufacture, distribute, dispense, analyze, or conduct research with those substances to the extent authorized by their registration and in conformity with the other provisions of this Act."

If a person delivers a controlled substance listed in Penalty Groups 1, 2, 3, or 4, without the authorization of Section 3.01, he commits an offense. If, because he was not registered with the director, this appellant was not authorized to dispense such controlled substances, he committed the offense of unlawful delivery by his unauthorized dispensing.

■ The appellant points to his license to practice medicine and his federal registration, arguing that they authorized him to dispense controlled substances in Texas. By the plain terms of Section 3.01, they are not sufficient. Those credentials may have made the appellant a practitioner,[1] but authorization to dispense controlled substances in Texas has been extended only to registrants, not to the larger class of practitioners.

Insofar as he suggests that his practitioner's credentials made registration an insubstantial formality, we reject the suggestion. It is true that a federal registration and a practitioner's license are partial qualifications for a Texas registration. Texas Controlled Substances Act, Section 3.03(a)(1) &

---

1. " 'Practitioner' means:

(A) a physician, dentist, veterinarian, scientific investigator, or other person licensed, registered, or otherwise permitted to distribute, dispense, analyze or conduct research

with respect to, or to administer a controlled substance in the course of professional practice or research in this state; * * *."
Texas Controlled Substances Act, Sec. 1.02(24).

(b)(1). But the applicant also must have made proper application. *Id.*, Section (a)(2) & (b)(2).[2] This application includes consent for the director to inspect the registrant's premises and records. *Id.*, Section 3.01(c) & (d). Such consents are important parts of a regulatory system, to which the nonregistrant practitioner is not subject. We also note that a Texas registration may be suspended, revoked, or limited even though the person remains licensed to practice and federally registered. *Id.*, Section 3.04(a)(1)–(2) & (5)–(6) & (b).

Insofar as the appellant suggests that the federal registration scheme preempts this area, we cannot agree. The federal Controlled Substances Act, Pub.L. 91–513, Title II, 84 Stat. 1284 (1970), provides:

"No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together."

21 U.S.C., Section 903. *See People v. Gard*, 76 Cal.App.3d 998, 143 Cal.Rptr. 346 (1978). *Cf. Wilson v. State*, 525 S.W.2d 30 (Tex.Cr. App.1975) (federal statute does not preempt marijuana regulation).[3]

We hold that the evidence was sufficient to have convicted the appellant of unauthorized delivery under Section 4.03 of the Texas Controlled Substances Act.

### IV.

Had the case been submitted to the jury only on the theory that the appellant, be-

cause he was not a registrant, made an unauthorized delivery, the judgment would be affirmed. In fact, the case was submitted to the jury with the following instructions:

"A. If you believe from the evidence beyond a reasonable doubt that in El Paso County, Texas on or about December 12, 1974, the Defendant, Ernesto Santoscoy, knowingly or intentionally delivered to Joe Franco a controlled substance, namely, Methaqualone, you will find the Defendant guilty of delivery of a controlled substance as charged in Count I of the Indictment (Verdict Form I–B), unless you find him not guilty of Count I under the instructions of Paragraph C below (Verdict Form I–A).

"B. If you do not so believe beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the Defendant not guilty of Count I (Verdict Form I–A).

"C. Even if you believe from the evidence beyond a reasonable doubt that the Defendant delivered a controlled substance, namely, Methaqualone, to Joe Franco as alleged in Count I of the Indictment, you shall find the Defendant not guilty of Count I (Verdict Form I–A), unless you further believe beyond a reasonable doubt either (a) that the Defendant was not, on the occasion alleged in Count I, a 'practitioner' as defined in paragraph 6 above or (b) if he was a 'practitioner' on the occasion alleged in Count I, that he did not deliver said controlled substance in the course of professional practice."

There were ten instructions in this form, one for each count.

"Practitioner" was defined in paragraph 6 as a physician licensed, registered with the Director of the Texas Department of

---

**2.** Since the time of the appellant's alleged offenses, other requirements for registration have been added. See 1979 Tex.Gen.Laws, ch. 90, sec. 3.

**3.** The appellant complains of the trial court's refusal to take judicial notice of the federal Controlled Substances Act. We need not address this ground, for the federal Controlled Substances Act is immaterial to this cause.

Public Safety to distribute or dispense controlled substances, or otherwise permitted to distribute or dispense a controlled substance in the course of professional practice in this State.

It was undisputed that the appellant had delivered controlled substances by dispensing written prescriptions; the only issue was whether the delivery was lawful. The charge effectively authorized a conviction on alternative theories. One was that the appellant was not a "practitioner" (which was defined to include registration).[4] The other was that the appellant, even though he was a practitioner and a registrant, did not act "in the course of professional practice." As we have held today, the former theory is valid, insofar as the person who delivers is not a registrant. As the court held in *Haney v. State*, 544 S.W.2d 384 (Tex.Cr.App.1976), the latter theory was not valid, for it would have amounted to an unconstitutional prosecution on an unwritten penal law. (The Legislature since has written a penal law to make such conduct an offense. See 1979 Texas General Laws, Chapter 90, Section 5.)

 A charge is fundamentally defective if it authorizes conviction for conduct that is not an offense as well as for conduct that is an offense. *Cumbie v. State*, 578 S.W.2d 732, 734–735 (Tex.Cr.App.1979). We must sustain the appellant's argument that the trial court's charge to the jury was fundamentally defective.

The State freely admits that its principal theory in this case was that the appellant was prescribing outside the scope of professional practice; the failure to register was only an afterthought. This case was tried before the decision in *Haney v. State*, 544 S.W.2d 384 (Tex.Cr.App.1976). The State recognizes that if we adhere to the holding in *Haney v. State*, as we have, there must be a reversal.

## V.

Because another trial may be held after remand, we call attention to a matter which has not been remarked by either party. *See Monroe v. State*, 142 Tex.Cr.R. 239, 172 S.W.2d 699, 700 (1943). The appellant was prosecuted in one indictment for fifteen different offenses committed on thirteen different days. Ten of these counts went to the jury, and the jury returned ten verdicts. The judgment and probation order subject the appellant to ten punishments by accumulating ten fines of $500 into a fine of $5000. V.A.C.C.P. Art. 21.-24(a) provides:

> "Two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code."

Except for the offenses defined in Chapter 3 of the Penal Code, only one conviction can be had on an indictment even though it has more than one count.

> "The object in inserting various counts in an indictment is not to secure separate convictions for as many counts, but to meet the various phases of the testimony; and it is permissible and proper to charge all the felonies which go to make up the offense committed by the defendant, but not to charge different offenses committed at different times and in different transactions. If that could be done, a man could be crushed by accumulating charges, or injured by their solemn presentation to the jury." *Crawford v. State*, 31 Tex.Cr.R. 51, 19 S.W. 766, 767 (1892).

The judgment is reversed and the cause is remanded.

---

4. Because of our disposition of this appeal, the appellant's complaint about the definition of "practitioner" need not be addressed separately.