Athene PATTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 64931.

Court of Criminal Appeals of Texas,
Panel No. 1.

June 10, 1981.

Monty B. Roberson, Bruce J. Ponder (Court-appointed on appeal only), El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and R. Bradford Stiles, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, DALLY and TEAGUE, JJ.

OPINION

DALLY, Judge.

This is an appeal from a conviction for two counts of theft of more than $200 but less than $10,000. On each count, the jury found the appellant guilty and assessed her punishment at imprisonment for nine years; the court imposed concurrent sentences.

The appellant asserts that the trial court erred in admitting two videotapes in evidence and the evidence is insufficient to sustain each conviction.

In September, 1978, the El Paso Police Department and the United States Customs Service jointly set up an undercover fencing operation code named "Operation Sting." As part of Operation Sting, the police established a "business," Nelson's Custom Carpenters, to serve as a buy site for stolen property; Agent John Vallova of the United States Customs Service and Officer William Pfeil of the El Paso Police Department posed as "fences" for the operation. Upon receiving a phone call from a seller, they would arrange a meeting to buy the seller's merchandise at the "business;" the police would then videotape the entire buy-sell transaction. Arrests were delayed in order to avoid jeopardizing the operation's effectiveness.

On February 20, 1979, and April 9, 1979, the police videotaped two transactions involving the appellant; State's Exhibit Three is a videotape of the February 20th transaction and State's Exhibit Four is a videotape of the April 9th transaction. The appellant says that State's Exhibit Three is inadmissible because it contains hearsay statements of Tony Smith and State's Exhibit Four is inadmissible because it is a copy of the original videotape and does not comply with the Best Evidence Rule. However, since the appellant never raised any objections complaining of hearsay or of the necessity for the original videotape at either the motion to suppress hearing or at trial, nothing is preserved for our review; the videotapes are admissible in evidence. See *Santoscoy v. State*, 596 S.W.2d 896 (Tex.Cr.App.1980); *Hebert v. State*, 586

S.W.2d 529 (Tex.Cr.App.1979); *Salinas v. State*, 507 S.W.2d 730 (Tex.Cr.App.1974). See also *Roy v. State*, 608 S.W.2d 645 (Tex. Cr.App.1980); *Edwards v. State*, 551 S.W.2d 731 (Tex.Cr.App.1977).

The appellant next asserts that the evidence is insufficient to support the jury's finding of guilt on each count in the indictment. The State relied on circumstantial evidence and the trial court properly instructed the jury on the law of circumstantial evidence as well as on the law of parties.

■ The first count in the indictment alleges that the appellant on or about February 21, 1979,

" . . . did then and there unlawfully intentionally and knowingly appropriate property, other than real property, to-wit: Three (3) Boxes of Oneida F Heirloom Stainless Flatware of the value of $100.00 per box, from DOMINGO TELLES, without the effective consent of the owner, DOMINGO TELLES, and with intent to deprive said owner of said property:

"On or about the 21st day of February, 1979, intentionally and knowingly appropriate property, other than real property, to-wit: Three (3) Boxes of Oneida F Delux Stainless of the value of $67.45 per box, from DOMINGO TELLES, without the effective consent of the owner, DOMINGO TELLES, and with intent to deprive said owner of said property; . . ."

On February 20, 1979, Agent Vallova and Officer Pfeil received a phone call from Tony Smith and a meeting was arranged to buy some merchandise from him. That evening, the videotape shows: Agent Vallova, Officer Pfeil and Smith negotiating a price for the silverware; Smith introducing the appellant as one of the persons that had appropriated the merchandise; and the appellant stating that she had "just gotten" the silverware. The appellant was also given a "business" card by Agent Vallova and Officer Pfeil before she left; no arrests were made at that time.

The State offered no direct proof that a theft of any silverware had ever occurred. Domingo Tellez, director of security for the Popular Department stores in El Paso, identified the Popular price tag on the silverware boxes, but testified that he was unaware of any theft of silverware from any of the Popular stores; Tellez testified that no inventory check was made to determine whether any silverware was missing from any of the Popular stores. Guy Scott, Popular's buyer of silverware, testified that to his knowledge there had been no theft of silverware from any of the Popular stores.

Viewed in a light most favorable to the jury's verdict, we find that the evidence is insufficient to sustain a finding that the property alleged in the first count of the indictment was stolen. Although Smith's statement suggests that the appellant stole the silverware, such statement alone is insufficient to show that any silverware was stolen from the Popular stores.

The second count in the indictment alleges that the appellant on or about April 9, 1979,

" . . . did then and there unlawfully, intentionally and knowingly appropriate property, other than real property, to-wit: one (1) 1966 Plymouth VIP Automobile of the value of more than $200.00, but less than $10,000.00, from ROLAND DURAN, without the effective consent of the owner, ROLAND DURAN, and with intent to deprive said owner of said property;"

On April 9, 1979, the appellant called Agent Vallova and Officer Pfeil to arrange a meeting to sell them an automobile. Two hours later the appellant, accompanied by John King and Willy Green, arrived at the "business." Agent Vallova, Officer Pfeil, King, Green, and appellant are seen on videotape negotiating the sales price for the automobile.

Roland Duran, the owner of the automobile, testified that on April 6, 1979, he was in San Angelo visiting his brother-in-law and that other guests in his brother-in-law's home included the appellant and King. During his visit, Duran allowed King to use his automobile to run an errand to the store; King returned that same evening

with the automobile. The following morning, however, Duran's automobile was gone; King and appellant were also gone. Duran had not given either the appellant or King permission to again use his automobile.

An inference of a defendant's guilt of a theft sufficient to sustain a conviction may arise from his possession of stolen property. To warrant such an inference of guilt from the circumstances of possession alone, such possession must be personal, must be recent, must be unexplained, and must involve a distinct and conscious assertion of right to the property by the defendant. *Todd v. State*, 601 S.W.2d 718 (Tex.Cr.App.1980); *Mulchahey v. State*, 574 S.W.2d 112 (Tex.Cr.App.1978); *Rodriquez v. State*, 549 S.W.2d 747 (Tex.Cr.App.1977); *Ellard v. State*, 509 S.W.2d 622 (Tex.Cr.App.1974). The appellant was shown to have access to the automobile; the appellant jointly possessed the automobile; the possession was recent, personal and unexplained; and her involvement in the sale of the automobile to Agent Vallova and Officer Pfeil was a distinct and conscious assertion of a right to the automobile. When viewed in a light most favorable to the jury's verdict, we find that the evidence is sufficient to sustain the appellant's conviction on the second count in the indictment.

The judgment on the first count in the indictment is reversed and reformed to show an acquittal. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). The judgment on the second count in the indictment is affirmed.

TEAGUE, Judge, concurring.

I concur in the result reached.

However, I believe that the majority's summary of the facts, regarding the theft of the automobile conviction, is sorely lacking.

In addition to what the majority has stated, I would add the following, which is taken from appellant's "Argument Brief."

On April 9, 1979, Officer Pfiel received a call from the Appellant on the telephone. She introduced herself as Tina, who was identified as appellant. Appellant stated that she had a car and wanted to know if the police were interested in purchasing it. Officer Pfiel advised Appellant to bring the vehicle to the shop which the police operated undercover. Approximately two hours later Appellant arrived with a 1966 Plymouth VIP. The vehicle was driven by an individual named John L. King. Another individual known as Willy Green was also present. All three of the individuals entered the shop and Officer Pfiel went out and looked at the vehicle and came back in. The parties then entered into negotiations. When the officers stated that the vehicle was old and would not be worth retitling and could only be used as a load car to transport marijuana, Appellant replied that she understood that and that she might even be interested in doing a little bit of that herself. The officers paid One Hundred and Twenty Five Dollars ($125.00) for the car and the money was picked up by John L. King. The title to the vehicle was in hand, registered to one Roland Duran and the title was given to the officers by John L. King.