**John Calvin JONES, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–83–713–CR, 01–83–714–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 17, 1985.

Will Gray, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., J. Harvey Hudson, Brad Beers, Harris County Asst. Dist. Attys., Houston, for appellee.

1. Amended by ch. 570, sec. 3.08, 1981 Tex.Gen.

Before EVANS, C.J., and COHEN and DUNN, JJ.

## OPINION

DUNN, Justice.

The appellant was convicted by a jury of two violations of the Texas Controlled Substances Act, Tex.Rev.Civ.Stat.Ann. art. 4476–15 (Vernon 1976).[1] The court assessed punishment at seven years probated and a $500 fine in each count.

The appellant, while employed as a registered licensed pharmacist, sold large amounts of controlled substances at excessive prices to an undercover investigator for the Texas State Board of Pharmacy, in violation of sections 4.08 and 3.08(e) of the Act. The indictment alleged that he "while a practitioner, namely a Pharmacist, did intentionally and knowingly dispense a controlled substance, namely Pentazocine, to [an undercover investigator], without a valid medical purpose and not in the course of professional practice."

The appellant raises three basic issues in his grounds of error:

a) Is a registered, licensed pharmacist a "practitioner" within the meaning and application of section 1.02(24)(A)?

b) Are the terms "valid medical purpose" and "in the course of professional practice" as contained in section 3.08(e) of the Controlled Substances Act so vague that they fail to give fair notice of their requirements and, as such, place an impossible burden on persons intended to be bound thereby?

c) Did the appellant "dispense" the controlled substance within the meaning of section 4.08?

The appellant argues that the indictment and the charge of the court were fundamentally defective because appellant, as a pharmacist, is not a "practitioner" within the meaning and application of section 4.08 of the Act.

Section 1.02(24)(A) defines "practitioner" as follows:

Laws 2313.

[A] physician, dentist, veterinarian, scientific investigator, *or other person licensed,* registered, or otherwise permitted to distribute, dispense, analyze or conduct research with respect to, or to administer a controlled substance in the course of professional practice or research in this state.... [emphasis added].

The appellant suggests that he cannot be a "practitioner" within section 1.02(24)(A) because another statute, the Texas Pharmacy Act, Tex.Rev.Civ.Stat.Ann. art. 4542a (Vernon 1976), defines "practitioner" differently. The Pharmacy Act, however, does not affect the definition of "practitioner" under the Controlled Substances Act.

■ The appellant, as a pharmacist, falls within the above definition of a "practitioner" in the category of "other persons licensed" to distribute or dispense a controlled substance. In *Merriman v. State,* 594 S.W.2d 410 (Tex.Crim.App.1979), which was before the court on the issue of "delivery" and "dispensing," the court affirmed the conviction of a licensed pharmacist as a "practitioner" under the Controlled Substances Act. Any other interpretation would exclude one of the largest and most critical segments linking the prescriber and the consumer. We hold that the appellant is a "practitioner" within the meaning of the Act.

■ The appellant also complains that the language of section 3.08(e) fails to give fair notice of the statutory requirements, and places an impossible burden on those bound by them.

Section 3.08(e) provides as follows:

A practitioner, as defined by Section 1.02(24)(A) of this Act, may not prescribe, dispense, deliver, or administer a controlled substance or cause a controlled substance to be administered under his direction and supervision except for a valid medical purpose and in the course of professional practice.

Texas courts have not decided the proper interpretation, or construction, of "valid medical purpose" and "in the course of

professional practice," as those terms relate to pharmacists. However, the question has been addressed by the federal court in *United States v. Hayes,* 595 F.2d 258 (5th Cir.1979). In *Hayes,* a pharmacist was convicted under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. sec. 841(a)(1), which contains language similar to the Texas Controlled Substances Act, for unlawfully distributing controlled substances by filling prescriptions which he knew were not issued for a legitimate medical purpose. He claimed that the terms "legitimate medical purpose" and in the "usual course of professional practice" were unconstitutionally vague. While conceding that the terms had been upheld in prosecutions of physicians, Hayes argued that they were nevertheless unconstitutionally vague when applied to a pharmacist

because he cannot have responsibility as a prescriber nor does he have any reasonable means to fulfill a duty of establishing that the practitioner-prescriber who issued the order did so in the usual course of medical treatment.... The most the pharmacist can do to verify the bona fides of a prescription is to check with the issuing practitioner; anything more will require him to examine the patient, which he is neither qualified or legally permitted to do.

*Id.* at 260–61.

The Fifth Circuit rejected this argument, relying on circumstantial evidence supporting the jury's conclusion that Hayes knew the prescriptions were not issued for a legitimate medical purpose. The evidence showed a high volume of prescriptions filled for a single individual, and high prices charged by Hayes. These factors are also present in the case at bar. In a footnote, the Fifth Circuit added that "the facts of this case show how a pharmacist can know the prescriptions are issued for no legitimate medical purpose without his needing to know anything about medical science." *Id.* at 261 n. 6.

We find appellant's argument that the statute is unconstitutionally vague to be without merit.

The appellant's final ground of error avers that even if he were a "practitioner," he did not "dispense" the substance within the meaning of the statute. He argues that, at most, he merely "delivered" or "distributed" a controlled substance, but did not "dispense" it improperly. This argument, too, is without merit.

The Controlled Substances Act, section 1.02(8) defines "deliver" or "delivery" as follows:

> "Deliver" or "delivery" means the actual or constructive transfer from one person to another of a controlled substance, abusable glue or aerosol paint, or drug paraphernalia, whether or not there is an agency relationship....

The Controlled Substances Act, section 1.02(10)–(11), defines "dispense" and "dispenser" as follows:

> "Dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner (in the course of professional practice or research), including the prescribing, administering, packaging, labeling, or compounding necessary to prepare the substance for such delivery.
>
> "Dispenser" means a person who dispenses.

 Given that the appellant was a practitioner for the purposes of the Controlled Substances Act, his actions in selling the controlled substances to the undercover investigator fall within the meaning of the term "dispense" as alleged in the indictment. The appellant's actions also constituted "delivery" under the Act. Even if appellant is semantically correct that the evidence at trial established "delivery," and not "dispensing," our courts have held that evidence establishing an unlawful "dispensing" did not fatally vary from an indictment alleging an unlawful "delivery". *Merriman,* 594 S.W.2d at 415. The evidence established an unlawful dispensing of a controlled substance; there was noth-ing improper in either the indictment or the charge of the court.

We overrule all of appellant's grounds of error and affirm the judgment of the trial court.