**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Clyde KANE, Defendant-Appellant.**

**No. 40234.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 4, 1979.

Robert E. Ahrens, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Gregory W. Schroeder, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

STEWART, Judge.

Defendant, a medical doctor, was convicted by a jury of two counts of illegal preparation of a prescription for Schedule III Controlled Substance, benzphetamine, and sentenced to pay a fine of $1,000.00 on each count. He appeals from the judgment entered upon the jury verdict.

For reversal defendant contends that the court should have sustained his motion for directed verdict because the State did not plead or prove that defendant prepared the prescription with a lack of good faith or outside the course of his practice. He also contends that two pharmacologists, called by the State, were not qualified to give opinion evidence with respect to accepted medical procedures and methods. We affirm.

Count I of the indictment charges that:

"CLYDE E. KANE on the 11th day of October, one thousand nine hundred and seventy-six at the City of St. Louis aforesaid, did feloniously, unlawfully and willfully issue a prescription to OSCAR MONTGOMERY, for a Schedule III Controlled Substance, BENZPHETAMINE, under the authority of his profession as a licensed physician for the State of Missouri, without the benefit of conducting an investigation into the medical history of the said OSCAR MONTGOMERY or performing a medical examination of the said OSCAR MONTGOMERY to determine whether or not said prescription was necessary; and thereafter, the said OSCAR MONTGOMERY did present the prescription to a licensed pharmacist, who then and there did fill the prescription as prepared by the said CLYDE E. KANE; contrary to the form of the Statute in such case made and provided and against the peace and dignity of the State."

Count II of the indictment is the same as Count I except that the charge refers to a prescription made to Gregory Hawkins.

The facts viewed most favorably to the State warrant a finding that Detectives Oscar Montgomery and Gregory Hawkins went to the offices of defendant; they signed a register and awaited their turn to see Dr. Kane. Detective Montgomery at the time was suffering from high blood pressure. Detective Hawkins was taking medication for an allergy. After about two hours and forty-five minutes Detective Montgomery was called into Dr. Kane's private office. He asked defendant for a prescription for Didrex, the trade name for benzphetamine, a Schedule III Controlled Substance. The defendant asked his name and address and wrote out the prescription for which he was paid $5.00 by Detective Montgomery. After Detective Montgomery left, Detective Hawkins went into the office and told defendant he wanted a prescription for Eskatrol. Defendant told him he was not doing Eskatrol that day but

would write him one for Didrex. Defendant wrote the prescription for which he was paid $5.00. The doctor's regular charge at the time was $2.00 per visit. Neither Detectives Montgomery nor Hawkins had been seen by defendant before. The doctor took no medical history, did not make any type of physical examination of the detectives. Defendant did not ask the purpose of the prescriptions and the detectives did not give defendant any reason. The prescriptions were filled at a pharmacy.

Benzphetamine is a stimulant and would tend to increase the blood pressure. Persons who suffer high blood pressure should not generally receive this medication. As a bare minimum a physician should not prescribe benzphetamine without taking the patient's blood pressure. The physician should also determine whether the patient has any allergies because some persons have allergic reactions to drugs such as benzphetamine.

Defendant's first point relied on reads as follows:

"The Court erred in overruling the defendant's Motion for a Directed Verdict at the close of all the evidence for the reason that the State did not plead or prove that the prescriptions were issued by the defendant with a lack of good faith or outside the scope of defendant's professional practice as set out in Missouri Revised Statutes, §§ 195.070 and 195.-240."

A determination of the issues raised under this point requires a review of the applicable statutory provisions.

The statute under which defendant was convicted, § 195.240, provides in part:

"The possession, sale, distribution, or transfer of any controlled substance listed in Schedules III, IV, or V, or any apparatus, device or instrument for the unauthorized use of such substances is unlawful, except in the usual course of business or practice, or in the performance of their official duties by the following persons:

"(1) Persons licensed under the provisions of chapters 330, 332, 334, 335, 338, and 340, RSMo;"

Defendant is a person licensed to practice under the provisions of Chapter 334.

Also applicable is § 195.070—1. providing:

"1. A physician, podiatrist or a dentist, in good faith and in the course of his professional practice only, may prescribe, administer, and dispense controlled substances or he may cause the same to be administered by a nurse or intern under. his direction and supervision."

Determinative of defendant's contentions on the present issues is § 195.180 that reads:

"In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of this law, it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this law, and the burden of proof of any such exception, excuse, proviso or exemption, shall be upon the defendant. (R.S.1939 § 9849)"

■ The only issue raised as to the validity of the indictment is that it did not charge that defendant did not come within the exceptions or exemptions of the law. The only challenge to the proof was that the State failed to prove that defendant did not come within such exceptions or exemptions. The burden was upon the defendant to bring himself within any exceptions or exemptions to the law and it was not necessary that the State plead or prove that defendant did not come within any exception, excuse or exemption. § 195.180; State v. Page, 395 S.W.2d 146 (Mo.1965). The contentions of defendant in this regard are without merit.

■ It is obvious, however, that the indictment pleads facts which remove defendant from the protection of the exceptions and exemptions under the law. A doctor who prescribes a potentially dangerous drug without first making some attempt to determine the physical condition or health needs of the person for whom he writes the prescription is not acting in good faith and in the usual course of his practice.

There is no patient physician relationship. See *White v. United States*, 399 F.2d 813 (8th C.C.A.1968). The indictment here alleges that defendant, a doctor, prescribed a Schedule III Controlled Substance without first investigating the medical history, or performing a physical examination to determine the need for the prescription. In like manner the evidence was sufficient to warrant the jury in finding that the allegations of the indictment were established.

Defendant next complains that the court erred in admitting into evidence the opinion evidence of Drs. Robert M. Burton and Leonard Naeger, pharmacologists, because the nature of their testimony was exclusively within the realm of the doctor of medicine.

Dr. Burton is Associate Professor of Pharmacology at Washington University School of Medicine. He has been with the medical school for twenty years. He instructs medical students in the use of drugs, the relationship between the doctor and patient in this regard, and the use of physical examination and history in reaching an adequate diagnosis before prescribing. He also carries out basic research on drugs. He has a Bachelor's degree from the University of Maryland, his Masters from Georgetown University and his Doctor of Philosophy from John Hopkins University.

Dr. Naeger is Associate Professor of Pharmacology at St. Louis College of Pharmacy. He has a Bachelor's, Master's and Ph.D. in pharmacology. His course of study is designed to teach students what drugs should be used under various circumstances and the types of problems they would encounter and "what contraindications there might be to various types of therapeutic regimens."

Pharmacology was defined as the study of the indications and mechanisms of action and use of drugs and their interaction.

These witnesses testified with respect to the properties of benzphetamine and its action upon the central nervous system and the necessity of obtaining sufficient information with respect to the patient before prescribing drugs, particularly benzphetamine. They testified that at a minimum a patient's blood pressure should be taken before he is given benzphetamine.

■ A witness is qualified to give his opinion as an expert when "by reason of education or specialized experience he possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or drawing correct conclusions." *Shelby County R–IV School District v. Herman*, 392 S.W.2d 609, 616 (Mo. 1965).

■ Whether a person has the qualifications to express an opinion is within the sound discretion of the trial court and is reviewable only for abuse of discretion. *State v. Stevens*, 467 S.W.2d 10, 23 (Mo. 1971).

■ This very issue was considered under similar circumstances, by U.S. Circuit Court of Appeals for the 8th Circuit in *White v. United States*, 399 F.2d 813 (1968). Dr. Burton was also the witness in that case. We concur with the reasoning of the court in that case when at page 820 it said:

"It would seem that one whose area of expertise is the study of the beneficial and harmful effects of drugs within the human body is in an especially advantageous position to testify as to the relationship which should exist between a doctor and patient, or what a doctor should know about his patient before prescribing a particular drug. He, as a student of drugs, can evaluate their potential effect in the human body. His testimony is along a line not generally known to laymen and jurors. Consequently, Dr. Burton is a proper expert and his testimony was within the range of his expertise."

What was said of Dr. Burton and his testimony is also applicable to Dr. Naeger and his testimony. We find that the trial court did not abuse its discretion.

The judgment of the trial court is affirmed.

KELLY, P. J., and SMITH, J., concur.