406 S.E.2d 758

**STATE of West Virginia, Plaintiff Below, Appellee,**

**v.**

**Edward H. YOUNG, Defendant Below, Appellant.**

**No. 19647.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 9, 1991.

Decided June 28, 1991.

C. Cooper Fulton, Kanawha County Public Defender Corp., Charleston, for appellant.

Joanna I. Tabit, Deputy Atty. Gen., Appellate Div., Charleston, for appellee.

McHUGH, Justice:

The primary issue in this appeal is one of first impression in this jurisdiction, specifically, under what circumstances a registered "practitioner," such as a physician or a dentist, may be held criminally responsible, under West Virginia's Uniform Controlled Substances Act, for the felonious constructive delivery of a controlled substance by the issuance of purported prescriptions for the controlled substance. For the reasons stated in this opinion we conclude that the convictions in this case under the multicount indictment are affirmed in part and reversed in part, and the

case is remanded for retrial of count 11 of the indictment. Specifically, we affirm the convictions of three counts of a felonious constructive delivery of a controlled substance (counts 2, 9 and 10), and we affirm the conviction of one count of a felonious obtaining of a controlled substance (count 1). On the other hand, this Court reverses the conviction of one count (count 11) "charging" both a delivery and a felonious obtaining. Finally, this Court reverses the convictions of four counts of a felonious obtaining of a controlled substance (counts 3, 4, 5 and 6).

I.

A. *The Convictions—General Information*

The appellant, Edward H. Young, D.D.S., a dentist duly licensed to practice in the State of West Virginia, was convicted in the Circuit Court of McDowell County, West Virginia ("the trial court"), of nine felony violations of West Virginia's Uniform Controlled Substances Act, *W.Va. Code,* 60A-1-101 to 60A-6-605, as amended ("the UCSA"). Specifically, the appellant was convicted (1) of three counts of felonious constructive delivery of a "Schedule II" controlled substance which is also a narcotic drug and (2) of six counts of feloniously obtaining a "Schedule II" controlled substance.[1]

The controlled substance involved in each count is a highly addictive narcotic analgesic with the trade name of "Tylox," which contains oxycodone and acetaminophen. Oxycodone, a derivative of opium, is expressly listed as a "Schedule II" controlled substance and is a "narcotic drug." *W.Va. Code,* 60A-2-206(b)(1)(M) [1986, 1991]; *W.Va.Code,* 60A-1-101(p) [1983]. A "Schedule II" controlled substance (1) has a high potential for abuse, (2) has currently

---

**1.** *W.Va.Code,* 60A-4-401(a)(i) [1983] and *W.Va. Code,* 60A-4-403(a)(3) [1971], respectively, are discussed in sections II and IV, respectively, of the text, *infra.*

Prior to submission of the case to the jury, the trial court, on the motion of the State, in effect ordered the entry of a judgment of acquittal of two felonious obtaining counts, namely, counts

7 and 8 of the indictment, due to evidentiary insufficiency (the "patient," not the appellant, received the Tylox). The trial court incorrectly referred to its action in this regard as "directing a verdict" for the defendant-appellant on these two counts of the indictment. *See W.Va.R. Crim.P.* 29(a).

accepted medical use in treatment in the United States or currently accepted medical use with severe restrictions and (3) the abuse of such substance may lead to severe psychic or physical dependence. *W. Va. Code*, 60A–2–205 [1975]. "Tylox" capsules, containing oxycodone, come under these criteria.

According to the 45th edition of the *Physicians' Desk Reference* (1991), oxycodone can produce drug dependence of the morphine type and, therefore, has the potential for being abused. Psychic dependence, physical dependence and tolerance may develop upon repeated administration of Tylox, and it should be administered with the same degree of caution appropriate to the use of other oral narcotic-containing medications. *Id.* at 1342. Tylox capsules are indicated for the relief of moderate to moderately severe pain. *Id.* The usual dosage, for adults, is one Tylox capsule every six hours (four per day) as needed for such pain. *Id.* at 1343. "However, it should be kept in mind that tolerance to oxycodone can develop with continued use and that the incidence of untoward effects is dose related." *Id.*[2] Expert testimony at trial indicated that *Tylox should be used for about a week or so at the most.*

The convictions involve transactions with two "patients" of the appellant, namely, Frank Gentry and Roger Jones. The three counts, namely, counts 2, 9 and 10, relating to the felonious constructive delivery of Tylox, and similar transactions involving these same two "patients," will be discussed first, in chronological order, followed by a separate discussion of one count (count 11) which "charges" both unlawful obtaining and delivery. Finally, we will discuss the five counts, namely, counts 1, 3, 4, 5 and 6, relating to the felonious obtaining of Tylox.

### B. *Counts 2, 9 & 10—Felonious Constructive Delivery*

Under counts 2, 9 and 10, each charging a felonious constructive *delivery* of a controlled substance, the State's theory was that the appellant issued purported pre-scriptions for Tylox intentionally or knowingly without a legitimate dental purpose, but, instead, only to satisfy the desire of the "patient" for the Tylox, and the "patient" picked up the Tylox at a drugstore pursuant to such prescriptions. Counts 2 and 9 involved "patient" Frank Gentry and transactions on December 23, 1986 and November 5, 1986, respectively. Count 10 involved "patient" Roger Jones and a transaction on December 15, 1986. In addition to these transactions, the appellant engaged in similar transactions with Messrs. Gentry and Jones, during this same period of time, for which the appellant was not indicted but which are important to show the appellant's knowledge and intent in issuing the prescriptions for which the appellant was charged in counts 2, 9 and 10. The evidence, viewed in the light most favorable to the State, indicates the following.

### COUNTS 2 & 9 (FRANK GENTRY)

On July 17, 1986, Frank Gentry, who already was addicted to Tylox, started going to the appellant because people "off the street" recommended the appellant as someone who readily would prescribe Tylox for him. During his first visit to the appellant, Mr. Gentry complained falsely that his teeth were hurting. The appellant very briefly examined Gentry's mouth during this first visit, without x-rays; noticed some "abscessed" teeth; and suggested some tooth extractions. Gentry told the appellant that he did not want any extractions and, in lieu thereof, inquired about fillings. The appellant responded that some of the teeth could not be filled. Gentry stressed the "pain" and stated, in essence, that he was allergic to Demerol, the trade name of another Schedule II narcotic analgesic (pain reliever). The appellant prescribed twenty Tylox capsules and an antibiotic for Gentry, the former of which Gentry obtained.

Still complaining falsely of tooth pain, Gentry saw the appellant again on July 28, 1986, and the appellant again prescribed twenty Tylox capsules and the antibiotic.

---

**2.** No prescription for a Schedule II controlled substance may be refilled. *W.Va.Code,* 60A–3– 308(b) [1985]. Instead, a new prescription, as medically indicated, would need to be obtained.

Gentry told the appellant that he might have another dentist do the dental work. The appellant also prescribed Tylox for Gentry on August 29, 1986 (ten capsules), and on September 15, 1986 (twenty capsules), with no examinations, even though the appellant admitted he was beginning to be suspicious of whether Gentry merely was wanting the Tylox due to an addiction to the same. Gentry obtained the Tylox under those prescriptions.

*Count 9* of the indictment, which charges the appellant with a felonious constructive delivery of a controlled substance, involves a transaction on November 5, 1986. On that date Gentry "ran into" the appellant on the post office's parking lot. During the ensuing conversation about Gentry's purportedly continuing tooth pain, the appellant, who did not examine Gentry's mouth, informed Gentry that he, the appellant, should not keep prescribing Tylox for Gentry. Nevertheless, the appellant inquired as to whether Gentry had fifty dollars. Gentry paid the amount in cash to the appellant who wrote Gentry a prescription for twenty Tylox capsules. Later on the same day Gentry obtained the Tylox at a drugstore.

The appellant next prescribed Tylox for Gentry on November 29, 1986, during a chance encounter on the sidewalk outside a tavern. Despite his telling Gentry again that he, the appellant, should not keep prescribing Tylox for Gentry, the appellant on that date wrote Gentry a prescription, free of charge, for ten Tylox capsules, which Gentry obtained.

*Count 2* of the indictment, charging a felonious constructive delivery of a controlled substance, addresses the next transaction between the appellant and Gentry, which occurred on December 23, 1986. Gentry had an appointment on that date with the appellant for a tooth extraction. After Gentry arrived at the appellant's of-

fice, the appellant declined to perform the tooth extraction because (1) he was reluctant to administer anesthesia in light of Gentry's upper respiratory infection ("URI") and because (2) Gentry had not brought someone with him to drive him back home had the appellant decided to administer the anesthesia and perform the extraction despite the URI. For fifty dollars the appellant prescribed twenty Tylox capsules and an antibiotic for Gentry, to "hold him over" the Christmas holiday. The appellant drove Gentry to a drugstore later on the same day, and Gentry obtained the Tylox.[3]

In summary, the appellant prescribed Tylox for Gentry (a total of 120 capsules) on seven occasions over four or five months, with, at best, a couple of cursory examinations, and without performing any dental procedures.

## COUNT 10 (ROGER JONES)

The other "patient" involved in the indictment, Roger Jones, who had heard that one could obtain Tylox prescriptions readily from the appellant, started going to the appellant on October 14, 1986, under the pretext of needing an "impacted" wisdom tooth removed. Due to "swelling" in the area of that tooth, the appellant, who very briefly examined Mr. Jones' mouth during that first visit, did not recommend extraction of the tooth at that time, but, instead, upon Jones' request, prescribed Tylox (twenty capsules) for the "pain" and an antibiotic for the "inflammation." Jones obtained the Tylox on that date.

Two days later, on October 16, 1986, the appellant again prescribed Tylox (twenty capsules) for Jones, which Jones obtained. Jones had told the appellant on that date that he needed more "pain" medication, even though he actually was not in pain.

On October 21, 1986, the appellant saw that the "swelling" had diminished some

---

**3.** The appellant claimed at trial that he also prescribed Tylox for Gentry on November 1, November 18, November 19 and November 24, 1986 (twenty capsules on each date, except for ten capsules on November 24). Gentry denied any knowledge of these prescriptions and denied receiving the Tylox under these prescrip-

tions. Counts 3, 4, 5 and 6, respectively, of the indictments charge that the appellant, and not Gentry, feloniously obtained possession of the Tylox on these dates by misrepresentation, fraud, deception or subterfuge, in violation of *W.Va.Code*, 60A-4-403(a)(3) [1971]. *See infra* subsection I(C) of this opinion.

and scheduled an appointment for Jones to have a tooth extraction about a week later. Pending the wait the appellant, on October 21, 1986, prescribed more Tylox (twenty capsules) and an antibiotic. Jones obtained the Tylox (but not the antibiotic) from a drugstore on October 21, 1986.[4] Jones did not keep the appointment for the tooth extraction.

Jones next saw the appellant on December 15, 1986. This transaction is the subject of *count 10* of the indictment, which charges a felonious constructive delivery of a controlled substance.[5] On that date, during a chance encounter on the liquor store's parking lot, Jones told the appellant falsely that he needed more "pain" medication. Although denied by Jones, the appellant testified that he very briefly "looked in his [Jones'] mouth." Until Jones' contemplated "extraction soon" thereafter, the appellant, on December 15, 1986, prescribed twenty more Tylox capsules, which Jones obtained on that date from a drugstore. Jones paid the appellant sixty-five dollars. The appellant never removed any of Jones' teeth.

In summary, the appellant prescribed Tylox for Jones (a total of eighty capsules) on four occasions over two months, with, at best, a couple of cursory examinations, and without performing any dental procedures.[6]

### C. *Counts 1, 3, 4, 5 & 6—Felonious Obtaining*

Under counts 1, 3, 4, 5 and 6, each charging a felonious *obtaining* of a controlled substance *by the appellant* by misrepresentation, fraud, deception or subterfuge, the State's theory was that the appellant on these occasions wrote Tylox prescriptions in the names of Messrs. Jones and Gentry, picked up the Tylox at the drugstores himself, ostensibly on behalf of these "patients," but appropriated the Tylox to his own use. Count 1 involved a prescription ostensibly for Roger Jones on December 14, 1986. Counts 3, 4, 5 and 6 involved prescriptions ostensibly for Frank Gentry on November 1, 18, 19 and 24, 1986, respectively. The evidence, viewed in the light most favorable to the State, discloses the following.

### COUNT 1 (ROGER JONES)

On December 14, 1986, the appellant wrote a prescription for twenty tylox capsules (and a prescription for an antibiotic), ostensibly for Roger Jones. This transaction is the subject of *count 1* of the indictment, which charges that the appellant feloniously obtained possession of a controlled substance by misrepresentation, fraud, deception or subterfuge, for his own use. The appellant claimed at trial that Jones called him from out of town and asked him to write the prescriptions and to pick up the prescribed substances because Jones would arrive back in town after the drugstore closed that evening. The appellant on that date admittedly picked up and paid for these prescriptions at the drugstore where Jones' mother was a cashier. Upon learning that Tylox had been prescribed in the name of her son, Jones' mother soon thereafter called Jones and asked him about the Tylox prescription. He denied any knowledge of the same, including denying that he called the appellant and asked for such prescription. The appellant testified at trial that he delivered the Tylox under this prescription to Jones two days later, on December 6, 1986, at the appellant's office. Jones denied receiving the Tylox under this prescription, and the appellant's charts on Jones do not contain any reference to any Tylox delivery to, or an office visit by, Jones on December 6, 1986.

---

4. This transaction between Jones and the appellant on October 21, 1986 is the subject of *count 11* of the indictment. *See also* section III of this opinion *infra*.

5. Count 10 of the indictment was amended to correct a clerical error, specifically, to reflect the correct date of December 15, 1986, instead of December 12, 1986.

6. The appellant called in most of the prescriptions at issue by telephone (and later reduced them to writing). Such a practice for a Schedule II controlled substance, like Tylox, is statutorily limited to emergency situations. *W. Va. Code*, 60A-3-308(b) [1985]. The record shows that none of these situations were dental emergencies.

## COUNTS 3, 4, 5 & 6 (FRANK GENTRY)

As stated previously, *see supra* note 3, the appellant prescribed Tylox in the name of Frank Gentry on November 1, November 18, November 19 and November 24, 1986. These are the subject of *counts 3, 4, 5 and 6* of the indictment, respectively, which charge that the appellant feloniously obtained possession of a controlled substance by misrepresentation, fraud, deception or subterfuge, for his own use. The appellant contended at trial that Gentry obtained these Tylox prescriptions on these dates at the appellant's office during office visits. Gentry denied any knowledge of these prescriptions, denied visiting the appellant on these dates and denied receiving the Tylox under these prescriptions. The State's evidence attempting to show that the appellant picked up the Tylox under these prescriptions at the drugstores consisted of pharmacists' testimony that the appellant had, on a few *unspecified* occasions, picked up prescribed substances at the drugstores on behalf of *unspecified* patients.

## II.

### A. *UCSA—Deliveries by Prescriptions of Practitioners*

West Virginia's version of the Uniform Controlled Substances Act of 1970 ("the UCSA") is codified at *W.Va.Code,* 60A–1–101 to 60A–6–605, as amended. West Virginia's UCSA, adopted in 1971, is derived from the Uniform Controlled Substances Act of 1970, which was approved in that year by the National Conference of Commissioners on Uniform State Laws.[7] The UCSA, in turn, is similar to its federal counterpart, the Federal "Controlled Substances Act" of 1970, as amended, 21 *U.S.C.* §§ 801–971 (1988), and, in fact, the Uniform Controlled Substances Act of 1970

"was drafted to achieve uniformity between the laws of the several States and those of the Federal government." Uniform Controlled Substances Act of 1970 prefatory note, vol. 9, part II, *U.L.A.* 2 (1988).[8]

Both the Federal Controlled Substances Act and West Virginia's UCSA contain sections authorizing certain persons, including physicians, dentists or other statutorily defined practitioners, to engage in certain activities with controlled substances once they comply with the registration sections of the respective Acts. Both Acts provide general penalties, applicable to "any person," for the offense of distributing or delivering controlled substances "except as authorized[.]" In addition, both Acts have separate, less severe penalty sections for violations of the technical, administrative requirements of the registration and prescription sections. We now turn to the key West Virginia statutory sections.

*W.Va.Code,* 60A–4–401(a) [1983], which is the statute alleged to have been violated in counts 2, 9 and 10 of the indictment, provides, in material part: "(a) *Except as authorized* by this chapter, it is unlawful for *any* person to ... deliver ... a controlled substance. [¶] Any person who violates this subsection with respect to: [¶] (i) A controlled substance classified in Schedule ... II which is a narcotic drug, is guilty of a felony[.]" (emphasis added)

■ The terms "deliver" or "delivery" mean, in relevant part, "the actual, *constructive,* or attempted transfer from one person to another of (1) a controlled substance[.]" *W.Va.Code,* 60A–1–101(g) [1983] (emphasis added). A "constructive delivery" under this statute "means the transfer of a controlled substance belonging to an individual or under his [or her] control by some other person or agency at the instance or direction of the individual

---

7. Vol. 9, part II, *U.L.A.* III, 2 (1988). *See also State v. Zaccagnini,* 172 W.Va. 491, 499, 308 S.E.2d 131, 139 (1983).

The National Conference of Commissioners on Uniform State Laws has adopted a 1990 version of the Uniform Controlled Substances Act. Vol. 9, part II, *U.L.A.* 1 (Supp.1991). The

1990 version has not been adopted in West Virginia.

8. *See also W.Va.Code,* 60A–6–603 [1971] (the UCSA "shall be so applied and construed as to effectuate its general purpose to make uniform the law with respect to the subject of this [Act] among those states which enact it.").

accused of such constructive transfer." Syl. pt. 4, in part, *State v. Ellis*, 161 W.Va. 40, 239 S.E.2d 670 (1977) (interpreting the very similar 1971 predecessor to *W.Va. Code*, 60A–1–101(g) [1983]). Accordingly, a physician, dentist or other practitioner makes a "constructive delivery" of a controlled substance to a purported patient by having a pharmacist make an actual transfer of the controlled substance to such patient pursuant to a valid or invalid prescription issued by the physician, dentist or other practitioner. *E.g., State v. Vinson*, 298 So.2d 505, 507–09 (Fla.Dist.Ct.App.1974), *aff'd on another point after remand*, 345 So.2d 711 (Fla.1977); *People v. Alford*, 405 Mich. 570, 584, 275 N.W.2d 484, 488 (1979); syl., *State v. Sway*, 15 Ohio St.3d 112, 472 N.E.2d 1065 (1984).[9]

Under *W.Va.Code*, 60A–3–302(a) [1971], as pertinent here, every person, otherwise authorized by law, who intends to distribute any controlled substance within this state must obtain annually a controlled substances distributor's registration, issued by the West Virginia board of pharmacy. *See also* 1 *W.Va.Code of State Rules* §§ 15–2–1.1 to 15–2–3.40 (1982). Compliance by distributors with the provisions of the federal law respecting controlled substances registration ordinarily entitles them to be registered in this state. *W.Va.Code*, 60A–3–303(d) [1971].[10]

Once duly registered, a person may distribute a controlled substance, but, importantly, only "to the extent authorized by their registration and *in conformity with*

the other provisions of this article." *W.Va.Code*, 60A–3–302(b) [1971] (in pertinent part; emphasis added).

Except when administered directly by a practitioner (other than a pharmacist) to an ultimate user, no controlled substance in Schedule II may be dispensed without the written prescription of a "practitioner." *W.Va.Code*, 60A–3–308(a) [1985]. Importantly, a "practitioner" is defined by *W.Va. Code*, 60A–1–101(v) [1983] to mean, in material part, "(1)[a] physician, *dentist,* veterinarian, scientific investigator, or other person licensed, registered or otherwise permitted to distribute, dispense, conduct research with respect to, or to administer a controlled substance *in the course of professional practice* or research in this State." (emphasis added)

Under *W.Va.Code*, 30–4–11 [1986], a licensed dentist has the same rights to prescribe or administer drugs or medicines "as may be *necessary* to the proper *treatment* of the special class of diseases mentioned in this article [on the practice of dentistry] as are enjoyed by registered physicians in this state." (emphasis added) This statute also provides: "Pharmacists of this state shall fill prescriptions of licensed dentists in this state for any drugs *necessary* for the practice of dentistry." (emphasis added)

### B. *Elements of Felonious Deliveries by Prescriptions of Practitioners*

The federal counterpart to *W.Va.Code*, 60A–4–401(a) [1983], quoted in the third paragraph of the immediately preceding

---

**9.** The terms "deliver" or "delivery" as used in section 401 of the UCSA (*W.Va.Code*, 60A–4–401) encompass both of the terms "distribute" and "dispense" as defined in section 101 of the UCSA (*W.Va.Code*, 60A–1–101). Uniform Controlled Substances Act of 1970 § 401 comment, vol. 9, part II, *U.L.A.* 92 (1988).

" 'Distribute' means to deliver, other than by administering or dispensing, a controlled substance[.]" *W.Va.Code*, 60A–1–101(j) [1983] (in relevant part). " 'Administer' means the direct application of a controlled substance[,] whether by injection, inhalation, ingestion, or any other means, to the body of a patient ... by: [¶] (1) A practitioner[.]" *W.Va.Code*, 60A–1–101(a) [1983] (in relevant part). " 'Dispense' means to deliver a controlled substance to an ultimate user ... by or pursuant to the *lawful* order of a

practitioner, including the prescribing ... necessary ... for that delivery." *W.Va.Code*, 60A–1–101(h) [1983] (in relevant part; emphasis added).

**10.** The state board of pharmacy must consider, however, whether issuance of the state registration would be consistent with the public interest. In determining the public interest, the state board of pharmacy shall consider several factors, including "(1) [m]aintenance of effective controls against diversion of controlled substances into other than *legitimate medical*, scientific, or industrial channels[.]" *W.Va.Code*, 60A–3–303(a)(1) [1971] (emphasis added).

The appellant at all relevant times was duly registered pursuant to both the federal and West Virginia controlled substances regulations.

subsection of this opinion, is 21 *U.S.C.* § 841(a) (1988). The relevant part of this federal statute provides: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—[¶] (1) to ... distribute ... a controlled substance[.]" The Supreme Court of the United States, in the leading case of *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), held unanimously that registered physicians or other registered practitioners may be prosecuted under this statute providing the severest penalties when their activities knowingly or intentionally "fall outside the usual course of professional practice[,]" *id.* at 124, 96 S.Ct. at 337, 46 L.Ed.2d at 337, referring to the statutory definition of "practitioner." The court so held regardless of whether the practitioners may also be prosecuted under another section, 21 *U.S.C.* § 842 (1988), for the less serious offenses of noncompliance with the technical, administrative requirements concerning controlled substances. *Id.* at 138, 96 S.Ct. at 343, 46 L.Ed.2d at 345.[11]

Accordingly, the Supreme Court of the United States in *Moore* rejected the proposition that there were two mutually exclusive systems of sanctions, a relatively toothless system for registered practitioners and a more serious system for all other persons. In fact, a registered practitioner who complies with the easily fulfilled formal requirements of prescription writing, etc., contained in the registration sections of the statute could, under the "mutually exclusive systems" approach, escape even misdemeanor liability. Therefore, under that approach, "a doctor would not even have to pretend to act as a doctor. He [or she] could stand on a street corner and sell prescriptions to passersby and yet he [or she] would be immune from ... prosecution." *United States v. Rosenberg*, 515

F.2d 190, 194 (9th Cir.), *cert. denied*, 423 U.S. 1031, 96 S.Ct. 562, 46 L.Ed.2d 404 (1975). *See also State v. Carr*, 95 N.M. 755, 761, 626 P.2d 292, 298 (Ct.App.), *cert. denied*, 95 N.M. 669, 625 P.2d 1186, and *cert. denied*, 454 U.S. 853, 102 S.Ct. 298, 70 L.Ed.2d 145 (1981).

*Moore*[12] referred to federal (Drug Enforcement Administration) regulations on prescriptions for controlled substances, specifically, the regulation now set forth in 21 *C.F.R.* § 1306.04(a) (1990), which is virtually identical to the West Virginia board of pharmacy's regulation on prescriptions for controlled substances, set forth in 1 *W.Va.Code of State Rules* § 15–2–9.5(a) (1982). The latter significantly provides:

(a) A prescription for a controlled substance to be effective must be issued for *a legitimate purpose* by an individual *practitioner acting in the usual course of his [or her] professional practice.* The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section three hundred eight, article three of the Act and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penal*ties* provided for violations of the provisions of law relating to controlled substances.

(emphasis added) *See also W.Va.Code*, 30–4–11 [1986], quoted above at the end of subsection II(A) of this opinion (dentist may prescribe drugs as may be necessary to proper treatment).[13]

---

**11.** The parallel in West Virginia's statute to 21 *U.S.C.* § 842 (1988) is *W.Va.Code*, 60A–4–402 [1971], the violation of any part of which is a misdemeanor.

**12.** Although we are not bound by *Moore* in our interpretation of West Virginia's UCSA, we are mindful of the earlier quoted intent of the drafters of the UCSA to achieve uniformity between the UCSA and the Federal Controlled Sub-

stances Act. *E.g., People v. Alford*, 405 Mich. 570, 586 & n. 6, 275 N.W.2d 484, 489 & n. 6 (1979).

**13.** *Cf. W.Va.Code*, 30–3–14(c)(13) [1986, 1989] (West Virginia board of *medicine* may discipline a *physician* for prescribing a prescription drug, including any controlled substance under state or federal law, "other than in good faith and in a therapeutic manner in accordance with ac-

The *statutory* language of *W. Va. Code*, 60A–1–101(v) [1983] for valid prescriptions, specifically, those issued "in the course of professional practice or research," and the language of the *regulation*, specifically, those prescriptions issued for a "legitimate purpose," have the same meaning and are used interchangeably. *United States v. Kirk*, 584 F.2d 773, 784 (6th Cir.), *cert. denied*, 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 708 (1978); *United States v. Plesons*, 560 F.2d 890, 897 n. 6 (8th Cir.), *cert. denied*, 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977); *United States v. Rosenberg*, 515 F.2d 190, 196–97 (9th Cir.) (a practitioner can act in the course of professional practice or research only by acting for a legitimate purpose), *cert. denied*, 423 U.S. 1031, 96 S.Ct. 562, 46 L.Ed.2d 404 (1975).

After *Moore* established that registered practitioners are only qualifiedly exempt from prosecution under the generally applicable provisions of the controlled substances felony statute, many of the United States Courts of Appeals delineated the elements of the offense of a felonious distribution of a controlled substance by a registered physician or other registered practitioner who issued a purported prescription for such a substance requiring a valid prescription. For example, the court in *United States v. Varma*, 691 F.2d 460, 462 (10th Cir.1982), outlined these elements: (1) the defendant distributed (constructively delivered) a controlled substance by the issuance of the purported prescription; (2) the defendant issued the purported prescription for the controlled substance without a legitimate medical or other authorized purpose (language of regulation) and, therefore, outside the usual course of professional practice or research (language of statutory definition of "practi-

tioner"); and (3) the defendant acted intentionally or knowingly. *See also United States v. Hayes*, 794 F.2d 1348, 1351–52 (9th Cir.1986), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *United States v. Betancourt*, 734 F.2d 750, 756–57 & n. 7 (11th Cir.), *cert. denied sub nom. Gerwitz v. United States*, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 365 (1984), and *cert. denied sub nom. Sando v. United States*, 469 U.S. 1076, 105 S.Ct. 574, 83 L.Ed.2d 514 (1984); *United States v. Rogers*, 609 F.2d 834, 839 (5th Cir.1980); *United States v. Kirk*, 584 F.2d 773, 784 (6th Cir.), *cert. denied*, 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 708 (1978); *United States v. Roya*, 574 F.2d 386, 390–91 (7th Cir.), *cert. denied*, 439 U.S. 857, 99 S.Ct. 172, 58 L.Ed.2d 165 (1978); *United States v. Plesons*, 560 F.2d 890, 896 (8th Cir.), *cert. denied*, 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977).[14] *See generally* annotation, *Federal Criminal Liability of Licensed Physician for Unlawfully Prescribing or Dispensing "Controlled Substance" or Drug in Violation of the Controlled Substances Act (21 USCS §§ 801 et seq.)*, 33 A.L.R.Fed. 220 (1977 & Supp. 1990).

Several state courts have delineated essentially these same elements for the corresponding offense under their respective versions of the UCSA or very similar state controlled substances legislation. *See, e.g., Cilento v. State*, 377 So.2d 663, 666 (Fla. 1979); *State v. Vinson*, 298 So.2d 505, 506–07 (Fla.Dist.Ct.App.1974), *aff'd on another point after remand*, 345 So.2d 711 (Fla. 1977); *State v. Adams*, 64 Haw. 568, 571–72, 645 P.2d 308, 311 (1982); *People v. Chua*, 156 Ill.App.3d 187, 194, 108 Ill.Dec. 837, 841–42, 509 N.E.2d 533, 537–38 (1987); *State v. Vakas*, 242 Kan. 103, 104–07, 744

cepted medical standards and in the course of the physician's ... professional practice.").

**14.** Other federal cases discussing the elements include: *United States v. Outler*, 659 F.2d 1306, 1308–11 (5th Cir. Unit B Oct. 1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 665 (1982); *United States v. King*, 587 F.2d 956, 963 (9th Cir.1978); *United States v. Rosen*, 582 F.2d 1032, 1033 (5th Cir.1978); *United States v. Jackson*, 576 F.2d 46, 48 (5th Cir.1978); *United*

*States v. Boettjer*, 569 F.2d 1078, 1080–83 (9th Cir.), *cert. denied*, 435 U.S. 976, 98 S.Ct. 1627, 56 L.Ed.2d 71 (1978); *United States v. Ellzey*, 527 F.2d 1306, 1308 (6th Cir.1976); *United States v. Rosenberg*, 515 F.2d 190, 192–98 (9th Cir.), *cert. denied*, 423 U.S. 1031, 96 S.Ct. 562, 46 L.Ed.2d 404 (1975); *United States v. Black*, 512 F.2d 864, 867–68 (9th Cir.1975); *United States v. Larson*, 507 F.2d 385, 386 (9th Cir.1974).

P.2d 812, 813–15 (1987); *State v. Moody*, 393 So.2d 1212, 1214–15 (La.1981); *State v. Fearing*, 30 Md.App. 134, 137–38, 351 A.2d 896, 899–900 (1976); *Commonwealth v. Comins*, 371 Mass. 222, 232, 356 N.E.2d 241, 247–48 (1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977); *People v. Alford*, 405 Mich. 570, 582–89, 275 N.W.2d 484, 487–91 (1979); *State v. Kane*, 586 S.W.2d 812, 814–15 (Mo.Ct.App.1979); *State v. Vaccaro*, 142 N.J.Super. 167, 172–74, 361 A.2d 47, 50–51 (App.Div.) (rejecting as "patently frivolous" defendant's arguments that (1) statute was unconstitutionally vague and that (2) criminal culpability does not attach where criminal penalties are set forth in one statutory section and limited exemption of registered practitioner is in another statutory section), *cert. denied*, 71 N.J. 518, 366 A.2d 674 (1976); *State v. Carr*, 95 N.M. 755, 758–63, 626 P.2d 292, 295–300 (Ct.App.) (statute not unconstitutionally vague), *cert. denied*, 95 N.M. 669, 625 P.2d 1186, *and cert. denied*, 454 U.S. 853, 102 S.Ct. 298, 70 L.Ed.2d 145 (1981); *State v. Sway*, 15 Ohio St.3d 112, 115–16, 472 N.E.2d 1065, 1067–69 (1984) (and syllabus by court). *Cf. State v. Mann*, 119 R.I. 720, 721–24, 382 A.2d 1319, 1320–21 (1978) (physicians or other practitioners, as "any person," may be convicted, under a provision identical to *W.Va.Code*, 60A–4–401(c) [1983], of "knowingly or in-tentionally ... possess[ing] a controlled substance unless the substance was obtained directly from[,] or pursuant to, a valid prescription or order of a practitioner while acting in the course of his [or her] professional practice, or except as otherwise authorized by this chapter [or act]."; physicians or other practitioners are exempt from penalties of UCSA only when they are registered and acting within scope of their registration). *Accord, Dover v. State*, 664 P.2d 536, 537–40 (Wyo.1983). *See also Commonwealth v. West*, 261 Pa. Super. 246, 249–50, 396 A.2d 380, 382 (1978) (controlled substances statute proscribing obtaining possession of controlled substance by misrepresentation, fraud, forgery, deception or subterfuge applied to registered practitioners, as well as to lay persons).[15]

▉ With respect to the requisite *mens rea* of acting intentionally or knowingly outside the usual course of professional practice or research, more than negligence is required. Although the registered practitioner's failure to comply with accepted medical, dental or other applicable standards of practice is a part of this element of the crime, mere malpractice in the prescribing of controlled substances is not a felony. Rather, it must be shown that the registered practitioner's malpractice was intentional, that is, his or her state of

---

**15.** A few state courts have held that registered physicians or other registered practitioners may be prosecuted for unlawfully prescribing controlled substances only under separate state statutes pertaining specifically to registered practitioners, and not under general state statutes proscribing "selling" or "delivering" controlled substances. *See Ex parte Evers*, 434 So.2d 813, 816 (Ala.1983); *Hales v. State*, 299 Ark. 93, 94–96, 771 S.W.2d 285, 285–87 (1989) (4–3 opinion); *People v. Lipton*, 54 N.Y.2d 340, 346–48, 429 N.E.2d 1059, 1061–63, 445 N.Y.S.2d 430, 432–34 (1981); *State v. Best*, 292 N.C. 294, 302–10, 233 S.E.2d 544, 549–54 (1977); *McLean v. State*, 527 S.W.2d 76, 79–81 (Tenn.1975) (pharmacist); *Santoscoy v. State*, 596 S.W.2d 896, 902 (Tex. Crim.App.1980); *Haney v. State*, 544 S.W.2d 384 (Tex.Crim.App.1976) (3–2 opinion).

These opinions are not persuasive. The Alabama and New York cases involved general statutes proscribing "selling" or "furnishing" controlled substances, and those terms, unlike the term "deliver" in *W.Va.Code*, 60A–4–401(a) [1983], did not expressly include constructive deliveries. The Arkansas court failed to give effect to the general statute's defining "delivery" to include "constructive" transfers, as the strong dissenting opinions observed. In both the North Carolina and Tennessee cases the statutes specifically applying to registered practitioners, unlike *W.Va.Code*, 60A–4–402 [1971], did not apply merely to technical, misdemeanor violations of administrative provisions, but, instead, violations of the practitioner statutes were *felonies* with penalties comparable to those set forth for violations of the general statute on the "delivery" of controlled substances. The Texas Court of Criminal Appeals in the *Haney* case, over forceful dissenting opinions, merely looked to the *registered* practitioner's *status* of being a registered practitioner, without looking to his or her statutorily authorized *activities*. A panel of the same court in the subsequent *Santoscoy* case followed *Haney* on this point with respect to *registered* practitioners but noted that the Texas legislature had enacted new legislation to change the result of *Haney* for activities after the periods involved in *Santoscoy* and *Haney*.

mind was such that he or she was not intending to treat the "patient's" underlying condition, but, instead, was intending merely to satisfy the desire of the "patient" for the controlled substance. *Commonwealth v. Comins*, 371 Mass. 222, 232, 356 N.E.2d 241, 247 (1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977); *State v. Sway*, 15 Ohio St.3d 112, 116, 472 N.E.2d 1065, 1069 (1984).

■ In accordance with the great majority of the courts, this Court holds that under *W.Va.Code*, 60A–4–401(a), as amended, which is part of West Virginia's Uniform Controlled Substances Act, the elements of the offense of a felonious constructive delivery of a controlled substance by a purported prescription issued by a registered physician, dentist or other registered practitioner are as follows:

(1) the defendant constructively delivered a controlled substance requiring a valid prescription by the issuance of a purported prescription on behalf of a purported patient who received the controlled substance from a pharmacist who filled such prescription; and

(2) the defendant issued such prescription intentionally or knowingly outside the usual "course of professional practice or research," thereby not engaging in the authorized activities of a "practitioner," as defined in *W.Va.Code*, 60A–1–101(v), as amended; in other words, such prescription was issued intentionally or knowingly without a legitimate medical, dental or other authorized purpose.

### C. Sufficiency of Indictment—Counts 2, 9 & 10

■ Counts 2, 9 and 10 of the indictment in the case now before this Court charged that the appellant, "a licensed practitioner of dentistry" in this state, did, on the respective dates and within McDowell County, West Virginia, "knowingly, intentionally, unlawfully and feloniously deliver" to the named "patient" a designated quantity of "Tylox," a Schedule II controlled substance, for a designated amount of money paid to the appellant, "in violation of West Virginia Code 60A–4–401(a), as amended," by prescribing such controlled substance

even though it was "not necessary in the medical treatment and care" of the named "patient," "against the peace and dignity of the State."

The appellant argues, as he did briefly during the hearing on his motion "to set aside the verdicts," that these counts of the indictment are void because, in referring to the invalidity of the prescriptions involved therein, these counts used the language, "not necessary in the medical treatment and care," rather than the statutory language (*W.Va.Code*, 60A–1–101(v) [1983]), specifically, outside "the course of professional practice or research" or the pertinent regulation's language (1 *W.Va.Code of State Rules* § 15–2–9.5(a) (1982)), specifically, not "for a legitimate purpose by an individual practitioner acting in the usual course of his [or her] professional practice." The appellant claims that the "not necessary" language of counts 2, 9 and 10 was vague and impermissibly reduced the State's burden of proof. That is, the appellant claims that a prescription may be issued for a "legitimate" purpose but one which is not actually "necessary," and the State, under counts 2, 9 and 10, must only show the easier proved point that the prescriptions were not "necessary," instead of showing they were not for a "legitimate" purpose. We disagree.

This Court has established the tests for the sufficiency of indictments in general and of indictments charging a violation of *W.Va.Code*, 60A–4–401(a), as amended, in particular. For example, in syllabus points 1–2 of *State v. Nicastro*, 181 W.Va. 556, 383 S.E.2d 521 (1989), we held:

'An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based.' Syl. pt. 3, *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983).

'An indictment that [substantially] follows the language of W.Va.Code, 60A–4–401(a), is sufficient on its face.' Syl. pt.

1, *State v. Meadows,* 170 W.Va. 191, 292 S.E.2d 50 (1982). Therefore, "we do not require that the indictment track the exact statutory language." *State v. Nester,* 175 W.Va. 539, 541, 336 S.E.2d 187, 189 (1985). Furthermore, "[a] reference to a code section in an indictment necessarily carries with it all of the [implicit] elements of the offense charged under that section." *Id.,* 175 W.Va. at 542 n. 1, 336 S.E.2d at 189 n. 1.[16]

■ In accordance with *Nester,* we believe that counts 2, 9 and 10 of the indictment here, by referring to *W.Va.Code,* 60A–4–401(a), as amended, necessarily averred all of the implicit elements of the offense of a felonious prescribing of a controlled substance, particularly, the element requiring an *intentional* act *outside* the "course of professional practice or research[.]"

■ Moreover, the language in these three counts charging that the prescriptions involved therein were issued although they were "not necessary in the medical treatment and care" of the respective "patients" sufficiently notified the appellant (and the grand and petit juries) of the offense charged. This language on the face of counts 2, 9 and 10 of the indictment in essence charged that the prescriptions were issued without a "legitimate purpose[.]" Because *W.Va.Code,* 30–4–11 [1986], quoted in the last paragraph of subsection II(A) of this opinion *supra,* authorizes a dentist to prescribe drugs "as may be necessary to the proper treatment" of the patient, the legislature intended for "necessary," in this context, to have essentially the same meaning as "legitimate," which is contained in the legislatively approved regulation of the state board of

pharmacy. In addition, other courts have used, or have upheld the use of, "necessary" and "legitimate" interchangeably in the context of indictments charging felonious prescribing of controlled substances. *See, e.g., United States v. Kirk,* 584 F.2d 773, 775 (6th Cir.), *cert. denied,* 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 708 (1978); *Commonwealth v. Perry,* 391 Mass. 808, 812 n. 3, 464 N.E.2d 389, 392 n. 3 (1984); *State v. Kane,* 586 S.W.2d 812, 813 (Mo.Ct. App.1979).

This flexibility in the selection of the charging terms in indictments for felonious prescribing of controlled substances is generally approved by the courts. *See, e.g., United States v. Jackson,* 576 F.2d 46, 48 (5th Cir.1978) (indictment charged that defendant physician acted knowingly, intentionally and unlawfully with respect to controlled substances, "under the guise and artifice" of operating a clinic; court held that indictment was sufficient, as it obviously embraced activities lacking legitimate medical purpose, even though it did not use "the magic words" of the Supreme Court in *United States v. Moore,* namely, "outside the usual course of professional practice"); *State v. Vakas,* 242 Kan. 103, 104–07, 744 P.2d 812, 813–15 (1987) (statute proscribed distribution of controlled substances "other than for a medical purpose"; indictment of physician used, "for other than a legitimate medical purpose"; court upheld indictment, rejecting defendant's assertion that use of additional word "legitimate" in indictment changed elements of crime, charged different crime, failed to state crime or lessened prosecution's burden of proof; rule of strict construction of penal statutes is subordinate to rule that judicial interpretation must be reasonable to effectuate obvious

---

**16.** A relevant example of this point is *State v. Trogdon,* 168 W.Va. 204, 283 S.E.2d 849 (1981). In that case we referred to our holding in an earlier case that only an "intentional" or "knowing" delivery of a controlled substance is prohibited implicitly by *W.Va.Code,* 60A–4–401(a), as amended, although the statute expressly does not require criminal intent for deliveries. Syl. pt. 3, *State v. Dunn,* 162 W.Va. 63, 246 S.E.2d 245 (1978). In *Trogdon,* however, the Court concluded that *Dunn* stood only for the proposition that criminal intent must be *proved,* but,

because the statute does not *explicitly* make such intent an element of the offense, an *indictment* charging a violation of *W.Va.Code,* 60A–4–401(a), as amended, need *not* aver *explicitly* such intent or knowledge. *Trogdon,* 168 W.Va. at 206–07, 283 S.E.2d at 851. Reference to the applicable *Code* section in the indictment implicitly avers criminal intent not explicitly made an element of the offense by the statute.

We note that counts 2, 9 and 10 of the indictment in the present case explicitly averred an intentional and knowing "delivery."

intent of legislature, and legislature obviously had not authorized prescriptions for an illegitimate, as well as for a legitimate, medical purpose).

In view of the foregoing this Court holds that a count in an indictment charging that a registered practitioner violated *W.Va. Code*, 60A–4–401(a), as amended, by "knowingly, intentionally, unlawfully and feloniously" delivering a controlled substance by prescribing the substance even though it was "not necessary in the medical treatment and care" of the purported patient sufficiently states the elements of the offense.

### D. *Instructions—Counts 2, 9 & 10*

 The appellant also argues that the instructions on counts 2, 9 and 10 constituted reversible error in that they, like the indictment, did not state the essential elements of the offense and did not inform the jury properly of the prosecution's burden of proof; instead, the appellant claims that the instructions, in fact, violated the appellant's due process rights by shifting the burden of proof to the appellant to show that his activities came within the limited "course of professional practice" exception to criminal culpability available to registered practitioners. We disagree.[17]

State's Instruction "B," given by the trial court, told the jury, in relevant part, that "the crime of Delivery of a Schedule II Controlled Substance is a felony and is committed when a person knowingly and intentionally delivers to another person a Schedule II controlled substance ... [¶] ... by an actual delivery or by a constructive transfer[.]" This instruction by itself in-completely stated the elements of the offense of felonious prescribing of a controlled substance by a registered practitioner.

However, other instructions were given on this subject. The appellant's (defendant's) instruction no. 12, in pertinent part, stated that the appellant "is a duly licensed, registered and practicing dentist in this state and[,] as such, is *authorized* and permitted, under the laws of [this state], to distribute, dispense, or administer a controlled substance *in the course of his professional practice* ..., including ... tylox, and to write prescriptions for same." (emphasis added) The appellant's instruction no. 13 was also given. It informed the jury that the appellant was acting within his rights as a dentist and must be found not guilty if the jury believed from the evidence that the appellant verified by examination the dental complaints of Gentry and Jones and prescribed Tylox as a treatment for pain, "under the doctor-patient relationship."[18]

Furthermore, the trial court's charge to the jury stated that the burden is always upon the prosecution to prove guilt beyond a reasonable doubt; that this burden never shifts to a defendant; that the State must prove every material allegation in the indictment and every element of the crime charged beyond a reasonable doubt; and that it is the duty of the State to prove criminal intent beyond a reasonable doubt.

The controlling principle is set forth in syllabus point 4 of *State v. Stone*, 165 W.Va. 266, 268 S.E.2d 50 (1980): "The giv-

---

**17.** We note that the appellant raises this point for the first time on appeal. During the settling of instructions the appellant objected to State's instruction "B," discussed below in the text, only on the ground that it used "deliver" instead of "dispense." Accordingly, the appellant technically waived the error which he now assigns. His argument here is without merit for the reasons discussed in the text below. We choose to address this point because of the need for guidance to the bench and bar in this area, in light of *W.Va.Code*, 60A–5–506(a) [1971], which is relied upon, in part, by the State.

**18.** The appellant's instruction no. 13 provides in its entirety as follows:

The Court instructs the jury that if you believe from the evidence that Roger Lee Jones and Franklin Gentry were patients of Dr. Edward H. Young who came to him complaining of abscessed teeth or any other dental complaint, which he verified by examination, and prescribed for them tylox as a treatment for pain and wrote prescriptions and assisted in having them filled, he was acting within his right as a licensed, practicing dentist, and you shall find the Defendant 'not guilty' on each and every count in the indictment where the prescriptions were written and filled under the doctor-patient relationship.

ing of confusing or incomplete instructions does not constitute reversible error where a reading and consideration of the instructions as a whole cure any defects in the complained of instructions." *See also United States v. Plesons*, 560 F.2d 890, 895–96 (8th Cir.) (considering general jury charge by trial court that prosecution bore burden of proof beyond reasonable doubt and general jury charge that defendant physician was entitled to prescribe within normal course of his medical practice, it was not reversible error for trial court to fail to include these points in specific instructions on each count), *cert. denied*, 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977).

We believe that State's instruction "B" and the appellant's instruction no. 13 did not shift the burden of proof to him to show his entitlement to the "course of professional practice" exception from culpability under *W. Va. Code*, 60A–4–401(a) [1983], in light of the appellant's instruction no. 12 and the trial court's charge on the State's bearing the burden of proof beyond a reasonable doubt, at all times, with respect to every element of the offense. Moreover, the instructions as a whole sufficiently stated the elements of the offense. *See United States v. Hayes*, 794 F.2d 1348, 1351–52 (9th Cir.1986), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987).

■ With respect to both the indictment (counts 2, 9 and 10) and the instructions, the State relies, in part, upon *W. Va. Code*, 60A–5–506(a) [1971], which provides:

(a) It is not necessary for the State to negate any exemption or exception in this chapter in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this chapter. The burden of proof of any exemption or exception is upon the person claiming it.

The State contends that the *existence* of a legitimate medical, dental or other authorized purpose for prescriptions for a con-

trolled substance is a statutory *exception* to the general offense set forth in *W. Va. Code*, 60A–4–401(a) [1983]. Therefore, the State argues that, under *W. Va. Code*, 60A–5–506(a) [1971], an indictment need not charge, as an *essential element*, the *lack* of a legitimate medical, dental or other authorized purpose for the prescriptions, and the burden of going forward with the evidence is upon a defendant registered practitioner to show that he or she issued the prescriptions with such a legitimate purpose.

If the State's argument is correct, a grand jury properly could return an indictment against *any* registered practitioner for prescribing a controlled substance, and the registered practitioner always would have the burden at trial of going forward with the evidence to show that the prescriptions were issued for a legitimate purpose. The effect of such a scheme would be a rebuttable presumption that *every* registered practitioner who prescribes a controlled substance does so without a legitimate purpose.

■ We do not believe the legislature intended such a scheme. In a few instances, such as here, the negation of what is facially a statutory exception is so necessary to a true definition of the offense that the elements of the crime are not fully stated without negation of the "exception." Stated another way, an essential element of a criminal offense is not always expressed in the statutory section defining the offense, but in a few instances may include the negation of an exception to the offense. *United States v. Outler*, 659 F.2d 1306, 1309–10 & nn. 3–4 (5th Cir. Unit B Oct. 1981) (disapproving earlier contrary 5th Cir. cases), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 665 (1982). *See also United States v. King*, 587 F.2d 956, 963 (9th Cir.1978); *United States v. Black*, 512 F.2d 864, 871 (9th Cir.1975) (presumption that registered practitioners prescribe for illegitimate purposes is irrational).[19]

---

**19.** We are aware that *United States v. Roya*, 574 F.2d 386, 391 (7th Cir.), *cert. denied*, 439 U.S. 857, 99 S.Ct. 172, 58 L.Ed.2d 165 (1978), and

*State v. Kane*, 586 S.W.2d 812, 814 (Mo.Ct.App. 1979), held that an indictment need not aver that the prescriptions were not issued for a

Accordingly, this Court holds that *W. Va. Code,* 60A–5–506(a) [1971], excusing the State from having to negate, in an indictment or at trial, any exemption or exception under West Virginia's Uniform Controlled Substances Act, is not applicable to a prosecution of a registered practitioner for feloniously prescribing a controlled substance in violation of *W. Va. Code,* 60A–4–401(a), as amended. Therefore, an indictment in such a prosecution must charge that the prescriptions were issued without a legitimate medical, dental or other authorized purpose, and the State must prove such element of the offense, as well as all other elements of the offense, beyond a reasonable doubt. This burden of proof includes the burden of the State, in its case in chief, to go forward with the evidence on the lack of such legitimate purpose for the prescriptions.

In the present case counts 2, 9 an 10 of the indictment, as discussed previously, essentially charged the lack of a legitimate purpose for the prescriptions at issue therein. In addition, the State introduced evidence in its case in chief to show the lack of a legitimate purpose for the prescriptions. Finally, the jury was instructed that the State bore the burden of proof as to every element of the crime charged beyond a reasonable doubt. Consequently, there was no reversible instructional or other error on these matters.

### E. *Sufficiency of Evidence—Counts 2, 9 & 10*

■ The appellant next argues, as he did below in his motion "to set aside the verdicts," that the evidence was not sufficient to support the convictions under counts 2, 9 and 10 of the indictment. We disagree.

The familiar statement of the standard to be used in analyzing the sufficiency of the evidence in a criminal case is set forth in syllabus point one of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978):

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

*Accord,* syl. pt. 1, *State v. Ward,* 185 W.Va. 361, 407 S.E.2d 365 (1991); syl. pt. 1, *State v. Ferrell,* 184 W.Va. 123, 399 S.E.2d 834 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2801, 115 L.Ed.2d 974 (1991).

We apply this *Starkey* test here to the evidence on the disputed elements of the offense charged in counts 2, 9 and 10, specifically, whether the prescriptions in question were issued for a legitimate dental purpose and, if not, did the appellant commit intentional malpractice. Our conclusion is that the evidence shows sufficiently that the prescriptions were issued intentionally for an illegitimate purpose, namely, only to satisfy the purported patients' desire for the Tylox.

The court in *United States v. Rosen,* 582 F.2d 1032, 1036 (5th Cir.1978), gave a non-inclusive list of factual scenarios indicating that purported prescriptions for controlled substances intentionally were not issued for a legitimate purpose. These recurring examples of behavior, extracted from the reported cases, include the following, one or more of which may be present in a given case:

legitimate purpose, because an indictment usually need not negate a statutory exception to an offense. These courts did not, however, discuss the irrational effect of presuming that the prescriptions for controlled substances were issued by registered practitioners for illegitimate purposes.

In *State v. Adams,* 64 Haw. 568, 645 P.2d 308 (1982), the court held that an indictment need not negate a legitimate purpose for the prescriptions; but the statute there explicitly made the showing of a legitimate purpose an "affirmative defense." That is not the case in this state.

(1) no, or only a cursory, examination was given;

(2) prescriptions were issued at intervals which were inconsistent with legitimate treatment of the underlying condition;

(3) there was no logical relationship between prescribing only the controlled substance(s) and treatment of the underlying condition allegedly existing;

(4) large numbers of prescriptions were issued;

(5) a large quantity of the controlled substance(s) was prescribed;

(6) the practitioner wrote more than one prescription on the same occasion to "spread them out";

(7) the practitioner warned the patient to fill prescriptions at different drugstores;

(8) the practitioner used street slang rather than professional terminology for the controlled substance(s) prescribed;

(9) the practitioner issued prescriptions to a "patient" known to be delivering the controlled substance(s) to others.

The first four factual scenarios were present in this case as shown in subsection I(B) *supra* of this opinion. *See also United States v. Chin,* 795 F.2d 496, 500, 503 (5th Cir.1986) (only cursory examinations; "patients" gave exaggerated "symptoms" to defendant practitioner); *Commonwealth v. Wood,* 17 Mass.App.Ct. 304, 306–07, 457 N.E.2d 1131, 1132–33 (1983) (dentist prescribed narcotic analgesics repeatedly and frequently over several months; little or no examinations and little or no dental treatments; court rejected defendant's argu-

ment that evidence showed only negligence).

The State's expert witness at trial, an emergency room physician trained and experienced in the area of narcotic prescribing practices was "very critical" of the appellant's narcotic prescribing practices. For example, in reviewing the appellant's charts on Gentry, the State's expert witness opined that those records suggested *more than* "simply atrocious narcotic prescribing practice and atrocious record keeping"; the records suggested "the possibility of doing something illegal." While the State's expert witness admitted that he was "conservative" in prescribing the use of "pain relievers," he also stated unequivocally that it clearly "would not be sound medical judgment to prescribe Tylox for a problem that the patient simply does not seek other treatment for, if it's a treatable condition." [20]

In any event there was sufficient evidence under the *Starkey* standard to show that the appellant's conduct in question bore virtually no more resemblance to professional dental practice than the conduct of any "street-corner [drug] pusher." *United States v. Larson,* 507 F.2d 385, 388 (9th Cir.1974).

### F. *Other Prescriptions Admitted into Evidence*

 The appellant renews here his timely objection at trial to the admission into evidence of numerous prescriptions of Tylox issued by the appellant during the same period of time involved herein to three *other* "patients" (not Messrs. Gentry and Jones); these prescriptions were not

---

**20.** The appellant's reliance upon *People v. Chua,* 156 Ill.App.3d 187, 108 Ill.Dec. 837, 509 N.E.2d 533 (1987), is misplaced. In *Chua,* the prosecution's expert witness conceded on cross-examination that the patient's charts provided a reasonable medical basis for the prescriptions, and the prosecution failed to show that the defendant prescribed enough of the controlled substance to maintain an addiction. *Id.* at 192–93, 509 N.E.2d at 536–37. The exact opposite of these facts was shown here.

In addition, the appellant's attack upon the State's expert testimony is unpersuasive, as the appellant has taken certain testimony of that witness out of context. The State's expert did admit to taking Tylox himself for a surgically

removed toenail, but only for a very limited time (three days); he was "fooled" once by Gentry as to the existence of pain, but the expert, unlike the appellant, was not "fooled" repeatedly and did conduct more than a cursory examination, thereby evincing an intent to treat the patient, not just to prescribe addictive pain relievers for months; this expert did admit he would, perhaps, prescribe narcotic analgesics to a *terminally* ill patient upon a chance encounter with the patient, but he explained that, unlike here, there is almost no concern about the addictive nature of such controlled substances when the patient is going to die in a few months anyway.

the subject of any of the counts of the indictment. Prior to offering this evidence, the trial court conducted an *in camera* hearing on the admissibility of these other prescriptions. The trial court gave a limiting instruction on the purpose for the admission of these prescriptions prior to allowing the State to proceed and reiterated the limiting instruction when giving the other instructions to the jury at the close of all of the evidence. The trial court told the jury that this evidence of other acts of the appellant was not admitted to prove the character of the appellant in order to show that he acted in conformity therewith. Instead, it was admitted to prove intent, knowledge, etc., of the appellant. We believe this evidence was admissible upon the basis stated by the trial court.

Rule 404(b) of the *West Virginia Rules of Evidence* authorizes the admission of the evidence in question. Quoting that rule, in its entirety, this Court held in syllabus point 1 of *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. W.Va.R.Evid. 404(b).

*See also* syl. pt. 2, *State v. Ferrell*, 184 W.Va. 123, 399 S.E.2d 834 (1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2801, 115 L.Ed.2d 974 (1991), syl. pt. 1, *State v. Robinette*, 181 W.Va. 400, 383 S.E.2d 32 (1989). Other courts considering the admissibility of extraneous prescriptions in the prosecutions of registered practitioners under the Federal Controlled Substances Act or similar state legislation have upheld the admissibility of such prescriptions under that jurisdiction's rule identical to *W.Va.R.Evid.* 404(b), to show the defendant's intent or knowledge that the prescriptions which are the subject of the indictment were not issued for a legitimate purpose. *See, e.g., United States v. Rogers*, 609 F.2d 834, 839–40 (5th Cir.1980); *United States v. Jackson*, 576 F.2d 46, 49 (5th Cir.1978);

*United States v. Ellzey*, 527 F.2d 1306, 1307 (6th Cir.1976); *Commonwealth v. Comins*, 371 Mass. 222, 235, 356 N.E.2d 241, 249 (1976) (testimony concerning extraneous prescriptions), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977).

■ The State's expert witness opined in essence that these extraneous prescriptions (involving "patients" other than Gentry and Jones) and the prescriptions involved in counts 2, 9 and 10, in light of the "patients'" charts, suggested that the appellant was engaged primarily in a "prescription writing" business. The trial court obviously weighed the probative value of the extraneous prescriptions as to the appellant's intent and knowledge against the danger of unfair prejudice or confusion of the issues. *See W.Va.R.Evid.* 403. The admissibility of such evidence, after Rule 403 balancing, is a matter within the sound discretion of the trial court. *State v. Hanna*, 180 W.Va. 598, 607, 378 S.E.2d 640, 649 (1989). *See also* syl. pt. 2, *State v. Robinette*, 181 W.Va. 400, 383 S.E.2d 32 (1989). We believe that the trial court in this case did not abuse its discretion in this regard.

### G. *Admission of Evidence of Nolo Contendere Plea*

■ The appellant testified on direct examination that during his practice in this state no "complaints [were] ever filed against" him concerning his federal and state registrations to distribute controlled substances. He claims he so testified to show his registration status while practicing dentistry in this state during the nine years prior to trial. On cross-examination, after an *in camera* hearing, the State asked the appellant if, in 1968 (nineteen years prior to this trial), in the Commonwealth of Pennsylvania he had pled *nolo contendere* to, and had been convicted of, a felony charge of forging a prescription to procure for himself Demerol, a Schedule II narcotic analgesic type of controlled substance. The State also asked the appellant if, in 1970, his license to practice dentistry had been suspended technically in the Commonwealth of Pennsylvania, where he was

then practicing, based upon the 1968 felony conviction for forging the Demerol prescription. The appellant, over his counsel's objection, was required to answer, and he answered both questions in the affirmative. The trial court gave a limiting instruction informing the jury that this evidence was admissible only for the purpose of impeachment of credibility.

The appellant claims that this ruling constituted reversible error. On this record we disagree. The admission of this evidence of the prior crime, as outlined above, for impeachment purposes, was error. Under Rule 609(a)(1) of the *West Virginia Rules of Evidence*, the credibility of an accused may be impeached by evidence of a prior crime but only if the prior crime involved perjury or false swearing. The forgery conviction did not involve perjury or false swearing.

 This Court concludes, however, that this error was harmless, nonconstitutional error under the test set forth in syllabus point 2 of *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979) (admission on cross-examination of defendant of inadmissible impeachment evidence as to his prior criminal convictions, including manslaughter eighteen years prior to trial, was harmless error in second degree murder conviction), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980):

> Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must

then be made to determine whether the error had any prejudicial effect on the jury.

*Accord*, syl. pt. 4, *State v. Ferrell*, 184 W.Va. 123, 399 S.E.2d 834 (1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2801, 115 L.Ed.2d 974 (1991); syl. pt. 4, *State v. Tanner*, 171 W.Va. 529, 301 S.E.2d 160 (1982) (harmless error; aggravated robbery conviction; cross-examination of defendant as to prior robbery conviction to impeach credibility; no prejudice in view of State's strong case).

 In the present case, as in *Atkins*, the prior conviction was similar to the charged crime but stale; a limiting instruction was given; the State did not emphasize the point in closing argument; and after removing this evidence the State's case still passes muster under *Starkey*'s sufficiency of the evidence test. While the State's case was basically circumstantial in nature, this one error was not reversible error. *See W.Va.R.Crim.P.* 52(a) (harmless error to be disregarded); *W.Va.R. Evid.* 103(a) (same in essence).[21]

### III.

### COUNT 11

 On the other hand, as the appellant raised in the memorandum in support of his motion "to set aside the verdicts," count 11 of the indictment is void, and the conviction thereunder must be set aside for legal error (not for evidentiary insufficiency).

On October 21, 1986, the appellant, as stated above in the text accompanying note 4, prescribed twenty Tylox capsules and an antibiotic for Roger Jones, who had fabricated a tale of woe concerning an impacted wisdom tooth. Jones obtained the Tylox on that date from a drugstore. He told the pharmacist at that drugstore that he would obtain the antibiotic from another drugstore, one at which his mother was a cash-

---

21. In addition, this error was invited by the appellant. The appellant should not have referred to the lack of "complaints" against him but only to the fact of his registered status.

We obviously do not address whether the evidence of this quite dated, prior conviction and license suspension would have been admissible in the State's case in chief, under *W.Va.R.Evid.* 404(b).

ier.[22] The pharmacist at the drugstore where Jones obtained the Tylox called the appellant and asked him if it was all right for the pharmacist to fill only the Tylox prescription. The appellant responded in the affirmative. Jones obtained the Tylox at that drugstore because he did not want his mother to know about his use of Tylox. This transaction is the subject of *count 11* of the indictment.

Count 11 is very confusing. It commences erroneously with a charge that the appellant feloniously *obtained* a controlled substance (Tylox) and concluded with an attempted charge of a felonious constructive *delivery* of the Tylox to the "patient" (Roger Jones) for the same transaction. As discussed immediately above, the evidence is uncontroverted that Jones received the Tylox on this occasion. Therefore, the trial court should have submitted this count to the jury on the charge of a felonious constructive delivery. The trial court, the State and the appellant, however, confused this count factually with the felonious obtaining counts (nos. 1, 3, 4, 5 and 6), and the trial court submitted this count to the jury only on the charge of felonious obtaining. The jury, therefore, mistakenly was led to find the appellant guilty of felonious obtaining under this count 11.

With respect to the appropriate charge of a felonious constructive delivery, count 11, unlike counts 2, 9 and 10 discussed previously, insufficiently charged that offense. The portion of this count attempting to charge such a delivery stated *merely* that the appellant "delivered" the Tylox to Jones on the date in question by the issuance of the prescription for that controlled substance. There was no language that the prescribed Tylox was "not necessary in the medical treatment and care" of Jones, as in counts 2, 9 and 10, and there was no other language indicating a lack of a legitimate dental purpose for this prescription. Count 11 did not aver that this constructive delivery was accomplished "knowingly, intentionally, unlawfully and feloniously[,]" as did counts 2, 9 and 10. Furthermore, count 11 contained no refer-

ence to *W.Va.Code,* 60A–4–401(a), as amended.

In *United States v. King,* 587 F.2d 956 (9th Cir.1978), the court held that an indictment charging a violation of 21 *U.S.C.* § 841(a), as amended, was fatally defective because it omitted an essential element of the offense, specifically, the lack of a legitimate medical purpose for the distribution by the registered physician. *Id.* at 963. The indictment is remarkably similar to count 11 of the indictment now before us in this case in that it alleged *merely* that the defendant registered practitioner did "distribute" a controlled substance. The court held that this was not a mere technical error. *Id.*

We agree. If such an indictment were upheld, the State would be entitled to indict a registered practitioner for violating *W.Va.Code,* 60A–4–401(a), as amended, every time the registered practitioner issued a prescription for a controlled substance requiring a prescription.

Accordingly, this Court holds that a count in an indictment charging that a registered practitioner violated *W.Va.Code,* 60A–4–401(a), as amended, in that he or she merely "delivered" a controlled substance by prescribing the substance is fatally defective because it does not set forth all of the essential elements of the offense, particularly the lack of a legitimate medical, dental or other authorized purpose for the purported prescription.

## IV.

### FELONIOUS OBTAINING—COUNTS 1, 3, 4, 5 & 6

We now turn to counts 1, 3, 4, 5 and 6 of the indictment, concerning the appellant's felonious obtaining of a controlled substance (Tylox). These counts charge that the appellant obtained possession of the Tylox on these occasions for his own use by misrepresentation, fraud, deception or subterfuge, in violation of *W.Va.*

---

**22.** Jones never obtained the antibiotic.

*Code,* 60A–4–403(a)(3) [1971].[23] As set forth above in subsection I(C) of this opinion, the State's *theory* was that the appellant on these occasions wrote Tylox prescriptions in the names of Jones and Gentry, picked up the Tylox at the drugstores himself, ostensibly on behalf of these "patients," but appropriated the Tylox to his own use, instead of actually delivering the Tylox to the "patients." The State's *evidence* that the appellant picked up and appropriated the Tylox to his own use was, with one exception, entirely circumstantial.[24]

This Court, in syllabus point 2 of *State v. Phillips,* 176 W.Va. 244, 342 S.E.2d 210 (1986), reiterated the general rule in this jurisdiction on the prosecution's burden of proof with respect to circumstantial evidence:

> 'Circumstantial evidence will not support a guilty verdict, unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence; and circumstances which create only a suspicion of guilt but do not prove the actual commission of the crime charged, are not sufficient to sustain a conviction.' Syl. pt. 2, *State v. Dobbs,* 163 W.Va. 630, 259 S.E.2d 829 (1979).

*Accord,* syl. pt. 2, *State v. Gum,* 172 W.Va. 534, 309 S.E.2d 32 (1983). Under this principle we conclude that the convictions under counts 3, 4, 5 and 6 must be set aside. The circumstantial evidence as to *these particular* occasions created only a suspicion of guilt, as there was *no* evidence from which the jury could infer beyond a reasonable doubt that the appellant, as opposed to someone else, picked up the Tylox. ▮▮▮▮ On the other hand, with respect to count 1, the jury resolved the conflicting testimony as to whether the appellant, who admittedly picked up the Tylox, later delivered the same to Jones. In light of the fact that the appellant's office records on Jones, otherwise detailed, do not contain any reference to any delivery of Tylox to, or office visit by, Jones on the date of the alleged delivery to him at the appellant's office, we believe there was sufficient evidence to support the conviction under count 1 of the indictment.[25]

## V.

### CONCLUSION

Based upon subsections II(A)–(G) of this opinion, this Court affirms the convictions under counts 2, 9 and 10 of the indictment for felonious constructive deliveries of a controlled substance. Based upon section IV of this opinion, we affirm the conviction under count 1 for a felonious obtaining of a controlled substance by misrepresentation, fraud, deception or subterfuge.

On the other hand, this Court, based upon sections III and IV of this opinion, reverses the conviction under count 11 (felonious obtaining), and remands the case for retrial of that count of the indictment. Finally, we reverse the convictions under counts 3 through 6 (felonious obtaining) of the indictment.

Affirmed in part; reversed in part and remanded.

---

**23.** *W.Va.Code,* 60A–4–403(a) [1971] provides, in relevant part: "(a) It is unlawful for any person knowingly or intentionally: ... [¶] (3) To acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge[.]" This offense is a felony. *W.Va.Code,* 60A–4–403(b) [1971].

**24.** With respect to count 1, the appellant admitted that he picked up the Tylox but claimed he later delivered it to Jones.

**25.** We do not address the other assignments of error. They were raised for the first time on appeal and, therefore, were waived, if any error occurred. These assignments of error include: (1) allegedly improper remarks by the prosecutor during closing argument; and (2) the affidavit in support of the search warrant for the appellant's dental office records allegedly was insufficient.